**OFFICE OF UTILITY CONSUMER COUNSELOR, Appellant,**

**v.**

**PUBLIC SERVICE COMPANY OF INDIANA, INC., Appellee.**

No. 93S02–9302–EX–224.

Supreme Court of Indiana.

Feb. 11, 1993.

James L. Turner, Robert K. Johnson, Fred Garcia, Office of Utility Consumer Counselor, Indianapolis, for appellant.

Jerry P. Belknap, Stanley C. Fickle, David F. Hamilton, Barnes & Thornburg,

Indianapolis, Cheryl M. Foley, Kay E. Pashos, PSI Energy, Inc., Plainfield, for appellee.

Ronald E. Christian, Beth Kirk, Indianapolis, for amici curiae Indiana Gas Co., Inc. and Indiana Energy, Inc.

Virgil L. Beeler, Fred E. Schlegel, Baker & Daniels, Indianapolis, for amicus curiae IWC Resources Corp.

## ON PETITION TO TRANSFER

DICKSON, Justice.

The issue in this case is whether Section 83(a) of the Indiana Utility Regulatory Commission Act requires the Indiana Utility Regulatory Commission to conduct a hearing regarding the creation of a holding company by Public Service Company of Indiana, Inc. ("PSI"). We conclude that such a hearing is not required.

In November of 1987, PSI, pursuant to the Federal Power Act § 203(a), 16 U.S.C. § 824b(a) (1935), filed an application with the Federal Energy Regulatory Commission ("FERC") for approval of a "corporate reorganization," Record at 21, effected by "a statutory exchange of stock whereby PSI will emerge as a subsidiary of a new holding company." Record at 24. In the proposed exchange, each issued share of PSI common stock outstanding would be automatically exchanged for one newly issued share of the holding company. Thus, the holding company would receive all of the common stock of PSI outstanding before the reorganization, rendering PSI a subsidiary of the holding company with the former PSI shareholders becoming owners of the common stock of the holding company. Unaffected by this exchange would be PSI preferred stockholders, who would retain the same accrued rights and preferences as before the exchange, as well as holders of first mortgage bonds of PSI. Record at 25. Further, PSI would continue to operate in the same manner after the exchange as before it. Record at 25.

Upon learning of PSI's restructuring application with FERC, the Office of Utility Consumer Counselor ("Consumer Counselor"), asserting application of Ind.Code § 8-1-2-83(a) ("Section 83(a)"), filed a motion with the Indiana Utility Regulatory Commission to set a hearing to determine whether PSI's proposed stock transfer should be approved. PSI responded by filing a motion with the Commission to dismiss the Consumer Counselor's hearing petition. On May 4, 1988, the Commission granted PSI's motion to dismiss. The Consumer Counselor appealed, asserting that Section 83(a) requires the Commission to conduct a hearing regarding the formation of a public utility holding company. The Court of Appeals agreed, reversed the Commission's dismissal order, and directed the Commission to conduct a hearing on the proposed holding company formation. *Office of Util. Consumer Counselor v. Public Serv. Co. of Indiana, Inc.* (1992), Ind.App., 592 N.E.2d 709. We grant transfer.

On appeal the issue presented by the Consumer Counselor is whether the stock exchange between PSI and the holding company constitutes a transfer of control encompassed by the language of Section 83(a), which states in relevant part:

> No public utility, as defined in section 1 [IC 8-1-2-1] of this chapter, shall sell, assign, transfer, lease, or encumber its franchise, works, or system to any other person, partnership, or corporation, or contract for the operation of any part of its works or system by any other person, partnership, or corporation without the approval of the commission after hearing.

Ind.Code § 8-1-2-83(a). The Consumer Counselor contends that Section 83(a) applies to require a hearing and alleges that potential dire consequences for utility rate payers may result from the unregulated activities of the holding company.

■ This Court has acknowledged that the broad grant of regulatory authority given the Commission by the legislature includes implicit powers necessary to effectuate the statutory regulatory scheme. *Northern Indiana Pub. Serv. Co., Inc. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 158. However, we are not free to construe a statute which is unambiguous, and our ability to effect perceived legislative purpose is necessarily limited to

the language of the statute. *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 971–72.

■ We cannot reasonably infer from the specific language of Section 83(a) an authorization for the Commission to conduct hearings for the approval of transfers of individual shareholders' stock effecting the formation of a holding company. The contemplated exchange for holding company stock does not involve a sale, assignment, transfer, lease, or encumbrance of PSI's franchise, works, or system, all of which PSI will continue to own. Only the shares of PSI stock are being transferred.

Because there is nothing within the plain meaning of the language in Section 83(a) that requires a hearing or approval by the Commission regarding the proposed stock transfer, we therefore reject the contentions of the Consumer Counselor that Section 83(a) requires the Commission to conduct a hearing with regard to the creation of, or transfer of shareholders' stock to, a holding company.

Transfer is granted. We affirm the Indiana Utility Regulatory Commission order issued May 4, 1988, dismissing the Petition of the Office of Utility Consumer Counselor for a hearing regarding the creation of a holding company by Public Service Company of Indiana, Inc.

GIVAN and KRAHULIK, JJ., concur.

DeBRULER, J., dissents with opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, dissenting.

The statutory provision upon which the Office of Utility Consumer Counselor grounded its request for a hearing upon the proposal of Public Service Company, Inc., (PSI), to form a utility holding company and to become a wholly-owned subsidiary of that holding company, provides in pertinent part:

> No public utility ... shall sell, assign, transfer, lease, or encumber its franchise, works, or system ... without approval of the commission after hearing.

Ind.Code § 8–1–2–83(a). A corresponding provision of the Federal Power Act, similarly provides:

> No public utility shall sell, lease, or otherwise dispose of the whole of its facilities ... without first having secured an order of the Commission authorizing it to do so.

Federal Power Act § 203(a), 16 U.S.C.A. § 824b. In 1987, the Federal Energy Regulatory Commission ("FERC"), federal counterpart of the Indiana Utility Regulatory Commission, interpreted Section 203(a), above, as conferring jurisdiction over the formation of utility holding companies. *Re Central Vermont Public Service Corp.*, 84 PUR 4th 213. (FERC 1987). FERC reasoned that when a public utility becomes a wholly-owned subsidiary of a holding company, the direct control of the facilities of the public utility passes from its shareholders to the board of directors of the holding company. According to FERC, when the substance, rather than the mere form, of the process is considered, there has been a disposition of jurisdictional facilities of the public utility as contemplated by Section 203(a), an event which moreover presents potential for abuses adverse to the public interest. While this federal construction of federal law does not bind this court in rendering its construction of the state law in this case, due to the striking similarity in the language and apparent purposes of the two statutes, it has considerable persuasive force.

A considered reading of § 83(a), above, leads in the same direction taken by FERC in the Central Vermont case. Section 83(a) reflects the judgment of the Indiana legislature that commission oversight is needed before certain proscribed events may take place in the life of a utility. Commission oversight exists for the purpose of setting price and securing delivery. *Citizens Action Coalition of Indiana, Inc. v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610. Each of the proscribed events in § 83(a) appears related to price and security of service. Each carries the potential for upsetting approved rates and diminishing service, and thus creates the need for regulators to make a jeopardy assessment. Diversification of a utility into high risk non-utility businesses

through the formation of a holding company carries a large measure of like potential. *See generally,* Jeffrey W. Knapp, *Effective State Regulation of Energy Utility Diversification,* 136 U.Pa.L.Rev. 1677; (1988) Ann de Rouffignac, *Entergy Pursues Tricky Path of Utility Diversification,* Wall St. J., Dec. 1, 1992, at B4.

The Court of Appeals majority below concluded that a reorganization through formation of a holding company constituted a "transfer" of the utility's franchise, works, or system. PSI responds that such reorganizations involve no sale or transfer at all by the utility, and that the franchise and jurisdictional assets remain with PSI undisturbed by the reorganization. PSI is entirely accurate if one looks no further than the legal nature of the relationships between the subsidiary stockholders as a body, subsidiary directors as a body, and the subsidiary corporation's continued ownership of franchise and jurisdictional assets. However, the language of the statute does not warrant such a restrictive look. The language of § 83(a) does not restrict proscribed events to those in which there is a change of ownership. Indeed, it ranges beyond and encompasses events in which only a transfer or encumbrance of jurisdictional assets is made. There is no reason at all to read this statute as including transfers of ownership and excluding transfers of possession and control. The more inclusive meaning is the more likely meaning, the one which is coincidentally consistent with the view taken by FERC in the *Central Vermont* case of the federal statutory idea of disposition of assets. Upon this understanding of the specific provisions of § 83(a), the legislative intent to grant jurisdiction to the commission to hold a hearing upon a proposal to reorganize by creating a holding company is present. Accordingly, I agree with the Court of Appeals in its conclusion that the Commission should hold the hearing requested by the Office of Utility Consumer Counsel.

SHEPARD, C.J., concurs.