The **HARVEST LIFE INSURANCE COMPANY, the Harvest Insurance Agency, Inc., and the Harvest Life Insurance Agency, Inc., Appellants–Petitioners,**

v.

**Marrill J. GETCHE, Appellee–Respondent.**

No. 61A04–9801–CV–18.

Court of Appeals of Indiana.

Nov. 13, 1998.

Rehearing Denied Dec. 22, 1998.

---

872

that Getche did not convert Harvest's policyholder lists.

## FACTS AND PROCEDURAL HISTORY

Getche was employed by Harvest as an insurance agent from 1974 until his retirement on February 18, 1995. The terms of the relationship were governed by an "Agent's Agreement." Harvest agents receive a commission upon the sale of an insurance product or annuity, and receive renewal commissions when an insured continues to pay the premium on the product purchased. Renewal commissions are paid while the agent remains employed with Harvest, or after the agent leaves Harvest, if the agent has served for more than twenty years, among other circumstances. At the time of Getche's retirement, his renewal commissions were worth approximately $64, 568 annually. Harvest has not paid renewal commissions to Getche since his retirement.

According to the Agent's Agreement, Harvest agents may forfeit their right to renewal commissions by committing acts of unfair competition. Those acts include selling a replacement policy, using or disclosing a Harvest policyholder list or other confidential information, inducing a Harvest employee or agent to leave Harvest, and any act defined by law as unfair competition. In November 1995, Getche sold his first replacement policy to a Harvest policyholder.

A few days prior to his retirement Getche prepared a letter which he sent to approximately 80 former Harvest policyholders on or about February 20, 1995. Getche and his lawyer then arranged a meeting on February 21, 1995, with Harvest Vice President Julian K. Bouwer, Harvest legal counsel Elaine Fishman, and Harvest Regional Manager Bert Elgersma immediately after which Getche returned several items to Harvest. Among those items were policyholder lists from Clay, Vigo, Vermillion, and Sullivan Counties.

On March 9, 1995, Harvest filed this lawsuit seeking a declaratory judgment that Harvest owed Getche no more agent commissions and to enjoin Getche from violating restrictive covenants in his Agent's Agreement with Harvest. On April 2, 1997, Getche

Thomas G. Stayton, Joseph E. Miller, Jr., Baker & Daniels, Indianapolis, for Appellants–Petitioners.

Lester H. Cohen, Kenneth E. Lauter, Haskin Lauter Cohen & Larue, Indianapolis, for Appellee–Respondent.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants, The Harvest Life Insurance Company, The Harvest Insurance Agency, Incorporated, and The Harvest Life Insurance Agency, Incorporated, (collectively "Harvest") appeal from the grant of summary judgment in favor of Defendant–Appellee, Marrill J. Getche, ("Getche").

We affirm in part and reverse and remand in part.

### ISSUES

Harvest raises several issues for our review which we restate as follows:

I. Whether the trial court correctly granted summary judgment by finding that Getche did not retain and use Harvest policyholder lists in breach of his agent agreement with Harvest;

II. Whether the trial court correctly granted summary judgment by finding that Harvest committed the first breach of its agent agreement with Getche;

III. Whether the trial court correctly granted summary judgment by finding that Harvest's policyholder lists were not trade secrets;

IV. Whether the trial court correctly granted summary judgment by finding that Getche did not interfere with Harvest's business relationships with its customers;

V. Whether the trial court correctly granted summary judgment by finding

filed a motion for summary judgment on all of Harvest's claims. The trial court granted Getche's motion on August 8, 1997, and filed findings of fact and conclusions of law. The trial court stayed all other proceedings pending this appeal.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

■ A trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). The party appealing the grant of a motion for summary judgment must persuade the appellate court that error occurred. *Id.*

When reviewing a grant of summary judgment, we use the same standard as applied by the trial court. *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997). Summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In making our determination, we consider the evidence designated by the parties in a light most favorable to the non-moving party. *Id.* Any doubt about a fact or inference is resolved in favor of the non-moving party. *Id.*

■ Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind.1996); Ind. Trial Rule 56(C). This is true even if the court believes the non-moving party will not succeed at trial. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct.App. 1995). Summary judgment should not be used as an abbreviated trial. *Watters v. Dinn*, 633 N.E.2d 280, 285 (Ind.Ct.App.1994).

■ On the issue of the entry of findings of fact after a hearing on a motion for summary judgment, the supreme court has held that:

> The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of

material fact to be resolved. Thus, in the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Hence, we employ our usual standard of review for cases disposed of by summary judgment.

*Rice v. Strunk*, 670 N.E.2d 1280, 1282 (Ind. 1996). Findings of fact are inappropriate when summary judgment is entered because there are no issues of fact. *Anderson v. Horizon Homes, Inc.*, 644 N.E.2d 1281, 1284 (Ind.Ct.App.1995). Where a trial court enters findings of fact and conclusions of law on a motion for summary judgment, the appellate court may not rely on such findings and conclusions but, instead, must base its decision upon the materials properly presented to the trial court. *Dague*, 647 N.E.2d at 1140. We are not limited to reviewing the trial court's reasons for granting summary judgment, but will affirm a grant of summary judgment if it is sustainable on any theory or basis found in the record. *Stephenson*, 596 N.E.2d at 1371.

## I. RETENTION AND/OR USE OF POLICYHOLDER LISTS

Harvest contends that Getche kept and/or used Harvest policyholder lists in violation of his agreement with Harvest. Harvest asserts that the fact that Getche composed the mailing to Harvest customers supports this contention. Getche counters that he did not use policyholder lists to complete the mailing, and that he used agent earnings summaries, agent's commission reports, in addition to, his memory and the phone book. The trial court granted summary judgment in favor of Getche on this issue.

■ As previously stated, if material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial. *Dague*, 647 N.E.2d at 1140. Considering the evidence before the trial court in a light most favorable to Harvest, Getche sent his mailing on February 20, 1995 and returned his policyholder lists to Harvest immediately after the

February 21, 1995, meeting. These facts raise an inference that Getche used the policyholder lists when putting together his mailing. We recognize that Getche strenuously denies that he used the lists. However, those conflicting facts and inferences create a material issue of fact to be resolved by the trier of fact. Summary judgment was inappropriate for this issue.

## II. FIRST BREACH

Harvest contends that Getche committed the first breach of their agreement by retaining and using policyholder lists for a purpose adverse to Harvest interests, thereby justifying Harvest's failure to pay renewal commissions to Getche. Harvest further argues that Getche breached their agreement by selling a replacement policy in violation of their agreement. Getche asserts that he did not retain, nor did he use, policyholder lists, and that Harvest committed the first breach of their agreement by failing to pay renewal commissions to him, thereby justifying his sale of replacement policies. The trial court granted summary judgment in favor of Getche on this issue.

We have held that a party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract. *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 52 (Ind.Ct.App.1986). Moreover, a party who fails to make payments as required by a contract is guilty of a breach thereof. *Id.*

Harvest's agreement with Getche provided as follows:

**SECTION 5–COMMISSIONS.**

\* \* \* \* \* \*

(b) RENEWAL COMMISSIONS—

\* \* \* \* \* \*

Company shall continue to pay renewal commissions to Agent, or Agent's surviving spouse or children, in accordance with the following provisions. In the event Agent ceases to be an active agent of Company because of one of the contingencies de-

scribed in (i), (ii) or (iii) above, such renewal commissions shall be paid to Agent.

\* \* \* \* \* \*

**SECTION 9–UNFAIR COMPETITION.**

\* \* \* \* \* \*

At no time during the two-year period commencing on the date Agent ceases to be an agent of Company shall Agent commit an act of unfair competition with respect to Company. For purposes of this Section, an act of unfair competition shall be deemed to include any one of the following:

(a) Within the Territory, soliciting or aiding others to solicit, directly or indirectly, an insured of any Insurer for sale of a policy in replacement of any policy of such Insurer.

(b) Copying, using or disclosing any policyholder list, prospect list or other trade secret or confidential information which was provided to Agent by Company, or was developed by Agent while serving as an agent of Company.

\* \* \* \* \* \*

In the event of the violation hereof or the commission of any act of unfair competition as defined herein, Agent shall be deemed to have forfeited any and all benefits and amounts otherwise due Agent hereunder and shall be further subject to any remedies and sanctions available to Company under applicable law, including injunctive relief and damages.

(R. 217).

We held in the previous issue that there was an issue of material fact to be determined by the trier of fact regarding whether Getche possessed and/or used Harvest policyholder information. Likewise, in this issue, there are material issues of fact to be resolved. Harvest claims that it was not required to pay to Getche renewal commissions once it discovered that Getche had sent a mailing to Harvest policyholders and then returned policyholder lists. Getche contends that he did not use the lists to prepare the mailing, he was entitled to renewal commissions which he did not receive, and that he was, therefore, justified in selling the re-

placement policy in November 1995. Summary judgment was inappropriate for this issue.

### III. TRADE SECRETS

Harvest contends that Getche violated the Indiana Trade Secrets Act, Ind.Code § 24–2–3–1 *et seq.*, by misappropriating Harvest's trade secrets and confidential information, namely, the policyholder lists. Getche contends that the information contained in the policyholder lists is not a trade secret and that he did not misappropriate that information. The trial court entered summary judgment in favor of Getche on this issue.

The statutory definition of trade secret is as follows:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind.Code § 24–2–3–2. We have held that a protectable trade secret has the following four characteristics: (1) information, (2) which derives independent economic value, (3) is not generally known, or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (4) the subject of efforts reasonable under the circumstances to maintain its secrecy. *Hydraulic Exchange and Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 785–86 (Ind.Ct.App.1998).

■■■ Whether customer information constitutes a trade secret or confidential information depends upon the facts of each individual case. *Woodward Insurance, Inc. v. White*, 437 N.E.2d 59 (Ind.1982). However, our examination of case law shows that where the information in question is a policyholder list of an insurance company, that information, which can include names of customers, policy coverage, premium amounts,

and expiration dates, is not a trade secret. *See e.g., Id.; Steenhoven v. College Life Insurance*, 458 N.E.2d 661 (Ind.Ct.App.1984), *on rehearing*, 460 N.E.2d 973 (Ind.Ct.App. 1984); *College Life Insurance v. Austin*, 466 N.E.2d 738 (Ind.Ct.App.1984); *Prudential Insurance Company Of America v. Baker*, 499 N.E.2d 1152 (Ind.Ct.App.1986). The rationale which has been followed in these cases is that the information could be obtained from the policyholder himself, from the policy, or from other materials provided to the policyholder by the insurance company. This court observed about College Life Insurance Company of America, in a footnote in *Steenhoven*, 460 N.E.2d at 975, what we observe today about Harvest. Harvest seems to seek to prevent competition by its former agent more than it seeks to protect a trade secret.

We agree with the trial court that the policyholder information in this case was not a trade secret. Summary judgment, therefore, was appropriate on this issue.

### IV. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

Harvest contends that Getche tortiously interfered with its business relationships with Harvest policyholders by inducing them to give up Harvest policies in favor of those sold by Getche. Getche asserts that his conduct constituted competition, and that he did not engage in unlawful activity in that regard. The trial court granted summary judgment in favor of Getche on this issue. We agree.

■■■ In Indiana, tortious interference with business relationships consists of five elements: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference in the relationship; (4) the absence of any justification; and, (5) damages resulting from the defendant's interference. *Comfax Corporation v. North American Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind.Ct.App.1992). Another element which is discussed with regard to proof of this cause of action is that a defendant acted illegally in achieving his end.

*Watson Rural Water Company, Inc. v. Indiana Cities Water Corporation,* 540 N.E.2d 131, 139 (Ind.Ct.App.1989).

On the issue of justification when it concerns competitors in business we have turned to the Restatement (Second) of Torts § 768 (1977) for assistance. This section provides as follows:

§ 768 Competition as Proper or Improper Interference

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint on trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Restatement (Second) of Torts § 768 (1977).

The commentary to Restatement (Second) § 768 (1977) explains as follows:

One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services. The

only limitations upon this are those stated in Clauses (a) to (d).

*Id.* at comment b.

The rule stated in this Section rests on the belief that competition is a necessary or desirable incident of free enterprise. . . .

*Id.* at comment e.

 Harvest contends that Getche was not justified in competing with it for customers because Getche breached his Agent's Agreement with Harvest. However, in *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1236 (Ind.1994), Winkler had an employment contract with a company which provided for termination only in the event of mutual agreement or disability. The contract further specified that Winkler was entitled to the remainder of earnings he would have been entitled to for the duration of the contract period in the event of a breach of those terms. The company later breached the employment contract. The supreme court held that even if a breach of contract occurred, the party had the right to do so subject to its responsibility for damages under the contract. *Id.* Here, assuming that Getche breached the contract by a) retaining or using a policyholder list, or b) selling a replacement policy, he was entitled to do so knowing that the consequence of his actions under the agreement provided for forfeiture of his renewal commissions.

We agree that competition along with a customer's own free choice as to which insurance company with which he or she chooses to do business supports the trial court's granting of summary judgment on this issue.

## V. CONVERSION OF POLICYHOLDER LISTS

 Harvest's last argument is that Getche converted Harvest's policyholder lists in violation of Ind.Code § 35–43–4–3. Harvest sought a civil remedy for that violation pursuant to the former version of Ind.Code § 34–24–3–1. Getche claims that Harvest presented no evidence to show that he either exerted unauthorized control over the policyholder lists, or that he did so knowingly or intentionally. The trial court granted sum-

mary judgment in favor of Getche on this issue.

We believe that summary judgment was inappropriate on this issue. There remains a material factual issue regarding whether Getche retained or used policyholder lists for a purpose disadvantageous to Harvest after he retired. Because that issue must be resolved by a trier of fact, this issue cannot be resolved as a matter of law.

## CONCLUSION

The decision of the trial court regarding retention and/or use of policyholder lists, first breach, and conversion of policyholder lists is reversed and remanded to the trial court for a determination by the trier of fact. The decision of the trial court regarding policyholder lists as trade secrets and tortious interference with a business relationship is affirmed.

Affirmed in part and reversed and remanded in part.

GARRARD and STATON, JJ., concur.