## CELLCO PARTNERSHIP, et al., Appellant–Defendant,

v.

## INDIANA UTILITY REGULATORY COMMISSION, Appellee–Plaintiff.

No. 93A02–0307–EX–639.

Court of Appeals of Indiana.

June 30, 2004.

---

Michael B. Cracraft, Steven W. Krohne, Hackman Hulette & Cracraft, Alan M. Hux, Kortepeter McPherson Hux Freihofer & Minton, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we hand this case down along with a related case, *Indiana Bell Telephone Co., Inc. d/b/a SBC Indiana, v. Indiana Utility Regulatory Commission, et al.* No. 93A02–0306–EX–484 (Ind. Ct. App. June 30, 2004). Appellants-petitioners Cellco Partnership, et al., (collectively,

the Wireless Carriers) appeal an order issued by the Indiana Utility Regulatory Commission (IURC), which determined that intrastate revenues generated by the Wireless Carriers are disclosable public records and are not subject to trade secret protection. Furthermore, as in the *SBC* case, the Wireless Carriers maintain that the IURC erred in departing from established precedent regarding confidentiality of certain data without setting forth its reasons for doing so. Concluding that no reversible error occurred, we affirm the IURC's order.

### FACTS

The Wireless Carriers are national or regional providers of competitive commercial mobile radio service (CMRS) in Indiana and elsewhere within the United States. While these companies are, for the most part, not subject to IURC regulations, the agency still collects from various public utilities, including the Wireless Carriers, public utility fees to pay costs incurred in the operation of its agency and the Indiana Office of Utility Consumer Counselor (OUCC). A public utility's annual fee is equal to .0015 of its gross intrastate operating revenues for the preceding calendar year.[1]

Indiana Code section 8–1–6–5 requires public utilities to "file with the [IURC] a report of their annual gross revenue for the preceding calendar year and a statement of the amount of public utility fee due on the basis of said report." Additionally, the IURC is required to prepare an annual report to the Indiana General Assembly's Regulatory Flexibility Committee on the status of competition among telephone companies pursuant to Indiana Code section 8–1–2.6–4.

In 2003, the IURC created the survey for Indiana wireless telecommunications carriers. In response, the Wireless Carri-

ers filed petitions requesting that the IURC find their intrastate revenue information submitted in the fee report and the survey to be "trade secrets" and not subject to disclosure under Indiana Code section 5–14–3–4(a)(4). In the past, the IURC has determined that intrastate revenue information contained in the fee reports submitted by the Wireless Carriers was not subject to public disclosure. For instance, the IURC determined that the financial data in AT & T Wireless' fee report was confidential and not available for public inspection in an entry dated April 30, 2002.

In this case, the IURC issued an order on June 26, 2003, finding that the Wireless Carriers' intrastate revenue information included in the survey and fee report would not be treated as "confidential financial information" or "trade secrets," both of which are exempt from public exposure under the statute. Moreover, the IURC determined that the documents must be made available for public inspection and copying. The IURC's order provided in pertinent part as follows:

> [T]he term 'confidential financial information' is defined to include the same competitive effects issues associated inherently with the definition of 'trade secrets.' Therefore, competitive effects issues are not confined to 'trade secrets.' We find that both trade secrets and confidential financial information can be subject to a claim that the disclosure of the public record would have a detrimental competitive effect on the submitter.

Appellant's App. p. 17.

> [A] statutory construction analysis of the relationship between Indiana code 5–14–3–4(a)(4) and 5–14–3–4(a)(5) reveals, in the context of the financial in-

---

1. Ind.Code § 8–1–6–3 and –4.

formation under consideration in these consolidated Causes, that section 4(a)(5) (confidential financial information) is more specific than section 4(a)(4) (records containing trade secrets). Indiana's supreme court has said: 'when faced with a general statute and a specific statute on the same subject, the more specific one should be applied.' *Ross v. State*, 729 N.E.2d 113, 116 (Ind. 2000).

Since confidential financial information includes the competitive effects issues raised by petitioners, it is a reasonable conclusion, and we so find, that the financial information for which confidentiality is sought in these consolidated Causes is 'financial information' and could be 'confidential financial information' if Petitioners could demonstrate that disclosure would result in substantial harm to their competitive positions. Though filed in the context of trade secrets, the Petitions and sworn statements filed in these consolidated Causes have been submitted for the purpose of making such a demonstration. *A resolution as to whether the financial information at issue is, in fact, confidential is not crucial to this Order. This is so, because so long as the financial information, which is claimed to be confidential, is required to be filed or submitted pursuant to state statute, it will be excluded from the exception to disclosure provided in Indiana Code 5–14–3–4(a)(5).*

Appellant's App. p. 14 (emphasis added).

We find it noteworthy in this proceeding, ... overall, a minority of all Indiana telephone companies has sought confidential treatment of the Wireless survey, the Fee Report and the Annual Report.... We also note that some Petitioners in these consolidated Causes are not consistently requesting that the same information in different public records be treated as confidential.... We note, too, that not all telephone companies requesting confidential treatment of this year's Fee Report and Annual Report have made the same confidentiality request for past years' reports. The Commission has required the submission of this information for many years. We do not know whether all or only some Indiana telephone companies consider the responses to the reports at issue in these consolidated Causes to be trade secrets or confidential financial information. What is obvious, though, is that not all affected Indiana telephone companies desire that the Commission treat the responses to the Wireless, Survey, the Fee Report and/or the Annual Report as nondisclosable public records. *While not dispositive of this issue in this Order, this lack of unanimity, or even a consensus as to the need for confidentiality, and lack of consistency in seeking confidential treatment for the same information, among affected Indiana telephone companies, is a factor that weighs against a finding that the responses should be excepted from public disclosure.*

Appellant's App. p. 18–19 (emphasis added).

*The information to be submitted to the Commission in Sections II and III of the Fee Report, requesting Indiana intrastate revenues, is financial information that is filed with the Commission pursuant to Indiana Code 8–1–6–5 and, therefore, is excluded from the relevant exception to public disclosure found in Indiana Code 5–14–3–4(a)(5). All remaining information in the Fee Report is nonfinancial in nature and is not information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclo-*

sure and use and, therefore, is not subject to the trade secret exception to public disclosure found in Indiana Code 5–14–3–4(a)(4).

Appellant's App. p. 19 (emphasis supplied). The information that the Commission has prescribed to accompany the balance sheet is standard accounting information that is necessary in order to fully understand the balance sheet. Indiana Code 8–1–2–16 provides a statutory directive with enough specificity to reasonably conclude that all of the 'F' Schedules in the Annual Report should be considered information that is filed with or received by the Commission pursuant to state statute. *It is our conclusion that the responses to Schedules F–2 through F–22 of the Annual Report contain financial information that is filed with the Commission pursuant to Indiana Code 8–1–2–16 and, therefore, are excluded from the relevant exception to public disclosure found in Indiana Code 5–14–3–4(a)(5).*

Appellant's App. p. 20 (emphasis added). Responses to Schedule G–1 of the Annual Report (Personnel Data), requesting number of employees within certain salary ranges, and to Schedule G–3 of the Annual Report (Officers' and Executives' Salaries), *contain financial information that is filed with or received by the Commission pursuant to Indiana Code 8–1–2–26 and, therefore, are excluded from the relevant exception to public disclosure found in Indiana Code 5–14–3–4(a)(5).*

Appellant's App. p. 16 (emphasis added).

. . .    . . .

We observe ... that the Verified Petition ... contains no factual information demonstrating how a report of political contributions in Schedule G–2 constitutes information that should be excluded from public disclosure as records containing trade secrets, or under any other possible exception to disclosure.... Many of the sworn statements in these consolidated Causes do not contain sufficient factual information to support a confidentiality determination, but contain merely conclusory statements that the information meets the elements of being trade secret information and, therefore, is entitled to confidential treatments.

*As to the information requested in the Annual Report that is not financial information, we concluded that Schedule G–4 (Access Lines in Service by Customer) and Schedule G–5 (Telephone Company Statistics) seek information that is the same as, or very similar to, the information regarding the number of access lines and other provided services sought in the Wire Line survey. As such, these are public records ... and are not trade secrets and not exempt from public disclosure.*

Appellant's App. p. 20–21 (emphasis added).

In its order, the IURC went on to note, as it did in the *SBC* case, that:

This Commission is directed to give a narrow construction to the trade secret exception to the disclosure of public records. Based on our findings that much of the information in the Survey can be obtained from other sources; that the Survey provides only general information about a company's customer base, containing neither financial information nor customer specific information; that the overall immature condition of competition in the telephone industry in Indiana is well known; and that this Commission, not competition itself, still needs to provide competitive direction to the telephone industry, we find that the Survey responses are not trade secret information, and therefore, are not ex-

cepted from public disclosure under Indiana Code 5–14–3–4(a).

Appellant's App. p. 21.

Finally, the IURC observed:

> [T]he non-financial information sought in the Annual Report [and schedules] ... is not information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value form its disclosure or use and, therefore, is not trade secret information and not exempt from public disclosure under Indiana Code 5–14–3–4(a)(4).

Appellant's App. p. 21 (emphasis added).

Thereafter, on July 15, 2003, the Wireless Carriers filed a petition for reconsideration and moved for a stay pending reconsideration, which was ultimately denied. The IURC expanded on its original reasoning, stating:

> The June 26, 2003 Order did not conclude that financial information could not be subject to nondisclosure pursuant to Indiana Code 5–14–3–4(a)(4). The June 26, 2003 Order discussed 'confidential financial information' as that term is used in Indiana Code 5–14–3–4(a)(5)....
>
> As we concluded, the financial information under consideration in our June 26, 2003 Order was, for the most part, factually consistent with the exception to nondisclosure found in Indiana Code 5–14–3–4(a)(5).

Appellant's App. p. 76. The Wireless Carriers now appeal from this order.

## DISCUSSION AND DECISION

### I. Standard of Review

■■■■ In resolving the issues that the Wireless Carriers present today, we first note that the General Assembly created the IURC primarily as a "fact-finding body with the technical expertise to administer the regulatory scheme devised by the leg-islature." *United States Gypsum v. Indiana Gas Co.*, 735 N.E.2d 790, 795 (Ind.2000). The purpose of that agency is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of this State. *Indiana Bell Telephone Co., Inc. v. Indiana Utility Regulatory Comm'n*, 715 N.E.2d 351, 354 (Ind. 1999). Moreover, the broad grant of regulatory authority given the IURC by the legislature includes implicit powers necessary to effectuate the statutory regulatory scheme. *Office of Utility Consumer Counselor v. Public Serv. Co. of Indiana, Inc.*, 608 N.E.2d 1362, 1363 (Ind.1993).

■■■■ An order of the IURC is subject to appellate review to determine whether it is supported by specific findings of fact and by sufficient evidence, as well as to determine whether the order is contrary to law. *United States Gypsum*, 735 N.E.2d at 795. On matters within its discretion, the IURC enjoys wide discretion. *Id.* Its findings and decision will not be lightly overridden just because this Court might reach a contrary opinion on the same evidence. *Id.* In order for this Court to vacate the Commission's Order, the Wireless Carriers must demonstrate that the order either lacks a factual basis or is contrary to law. *See id.*

### II. The Wireless Carriers' Claims

#### 1. Sufficient Findings

■■■ Similar to the argument that *SBC* had advanced, the Wireless Carriers contend that the information involving their intrastate revenue data should have been protected as trade secrets and hence, should not be disclosed to the public. In essence, the Wireless Carriers argue that their "respective intrastate revenue information is financial information, the public disclosure of which would ... allow competitors to assess the relative efficacy of each Wireless Carrier's marketing and

strategic business initiatives in Indiana and make strategic changes to their own business and marketing plans based upon each Wireless Carrier's performance." Appellant's Br. p. 14.

However, the IURC's order makes it clear that the information supplied by the Wireless Carriers was subject to public disclosure, not because it constituted a trade secret, but because it was financial information that was to be filed or submitted in accordance with our statutes. To be sure, Indiana Code section 5–14–3–4 provides a list of the public records that may not be disclosed by a public agency. Specifically, the statute provides that:

The following public records are excepted from section 3 of this chapter and may not be disclosed by a public agency, unless access to the records is specifically required by a state or federal statute or is ordered by a court under the rules of discovery;

(4) Records containing trade secrets.

(5) Confidential financial information obtained, upon request, from a person. *However, this does not include information that is filed with or received by a public agency pursuant to state statute.*

(Emphasis added).

As set forth above, the IURC's order examined these exceptions, and the agency specifically determined that the information should be considered under the "confidential financial information" exception set forth in subsection (5) above. Thus, inasmuch as the trade secret exception does not apply to the requested information in this case, a determination of whether the information was confidential was not required. That said, we further note that the IURC correctly observed that Indiana Code section 8–1–6–5 requires public utilities—including the Wireless Carriers—to file a report of their annual gross revenue which includes "intrastate operating revenue." *See* I.C. § 8–1–6–3. As the findings

indicate above, the order goes on to outline and analyze all of the statutory filing requirements that are satisfied by the financial information sought in the forms. Put another way, the order contains those findings necessary to support the conclusion that the data at issue was financial information that must be publicly disclosed within the meaning of subsection (5) of the statute.

Finally, we note that the Wireless Carriers urge that the requested financial material should be protected under the "trade secret" exception, notwithstanding the IURC's determination that it did not fall within the exception pursuant to Indiana Code section 5–14–3–4(a)(5). However, even if the "trade secret exception" would be applicable here, the Wireless Carriers have failed to demonstrate that the requested material constituted the same. We thus incorporate our discussion regarding the trade secret exception in the *SBC* case, and further note that the Wireless Carriers have only demonstrated that the disclosed information has limited economic value. Also, there is no showing that the data could not have been ascertained through other means, in light of the inconsistent manner in which other carriers have treated this same data. Thus, the Wireless Carriers' arguments that the order may not stand on this basis must fail.

### 2. Judgment Contrary to Law

The Wireless Carriers next argue, as did SBC, that the IURC's decision must be set aside because it failed to follow controlling precedent. Specifically, the Wireless Carriers maintain that the judgment cannot stand because the order gave no indication as to how or which of the IURC's prior orders granting confidentiality to certain data had incorrectly applied Indiana law.

Similar to the order in *SBC*, the IURC made the following determination in this case:

> The Commission is aware that, in prior years, presiding Administrative Law Judges, assigned to various proceedings in which confidentiality has been requested for portions of the completed Local Competition Surveys, have found that certain information should be treated as confidential on a *preliminary* basis. However, we note that formal *in camera* review has never been requested by a party to these proceedings, and the determinations made by the Presiding Administrative Law Judges have remained 'preliminary.' We are also aware that several existing Commission Orders contain language that creates a rebuttable presumption that 'market information,' and even market information submitted to monitor competition, is confidential. This Commission has recently tried to be more precise in its determinations as to what information will be treated and maintained as confidential. We find it appropriate, at this time, to fully examine the issue of confidentiality as it pertains to the completed Wireless Survey, Fee Report, and Annual Report. To the extent our examination herein results in conclusions that are inconsistent with previous Administrative Law Judge or Commission conclusions, we find our examination herein to be a more accurate application of the law relevant to confidentiality.

Appellant's App. p. 7.

When construing this portion of the order in conjunction with the remaining findings and conclusions, it is apparent that the IURC has fully examined the issues in this case, and it has made relevant factual findings in support of the judgment. Moreover, as explained in the findings, only a minority of the telephone companies has sought confidential treatment of the survey and the reports. The companies also have not shown consistency in requesting that the same information in different public records be treated as confidential. Additionally, not all of the companies requesting confidential treatment of the material have made the same confidentiality request for the reports in years past. In our view, the IURC got it right when it concluded that such a lack of unanimity or consensus as to the need for confidentiality, along with the lack of consistency in seeking confidential treatment for the same information, are factors that weigh against a finding that the various responses should be excepted from public disclosure. As a result, we reject the Wireless Carriers' claim that the IURC failed to adequately explain why it chose to take a different approach and depart from its prior treatment of this data.

Judgment affirmed.

ROBB, J., concurs.

BARNES, J., concur in result with opinion.

BARNES, Judge, concurring in result with separate opinion.

I concur in result with the majority's opinion. Relying on the IURC's categorization of the information that the Wireless Carriers sought to keep confidential, the majority concluded that such information constituted confidential information filed with a public agency and was subject to disclosure pursuant to Indiana Code Section 5–14–3–4(a)(5). I disagree with the majority's assertion that confidential financial information filed with a public agency is subject to disclosure even if that same information constitutes a trade secret.

Indiana Code Section 5–14–3–4(a)(4) provides that public records containing trade secrets generally may not be disclosed by a public agency. Indiana Code Section 5–14–3–4(a)(5) provides that confi-

dential financial information may not be disclosed unless it is filed with a public agency. I read these two sections to mean that public records containing trade secrets may not be disclosed and that confidential financial information, which does not rise to the level of a trade secret, may be subject to disclosure if it is filed with a public agency. Thus, I would conclude that if a record contains a trade secret, it may not be disclosed even if it may also be categorized as confidential financial information.

Although I disagree with the majority in this regard, I concur in result because I do not believe the Wireless Carriers have established that this information is in fact a trade secret. Indiana Code Section 24–2–3–2 defines a trade secret as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A protectable trade secret has the following characteristics: (1) information, (2) that derives independent economic value, (3) is not generally know, or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (4) the subject of efforts reasonable under the circumstances to maintain its secrecy. *Harvest Life Ins. Co., v. Getche*, 701 N.E.2d 871, 876 (Ind.Ct. App.1998), *trans. denied* (1999). Whether information is a trade secret depends on the facts of each case. *Id.*

The Wireless Carriers submitted affidavits to the IURC in support of the nondis-closure of their intrastate revenues. The multiple affidavits generally contain summary assertions in an attempt to categorize this information as a trade secret. Even if the bare assertions of the affidavits are sufficient to determine whether the requested intrastate revenues constitute trade secrets, the Wireless Carriers have not established that this information has *independent* economic value.

All of the affiants assert that his or her company's intrastate revenues are of economic value to its competitors because this information is indicative of their respective market shares. However, based on the limited assertions in the affidavits, it appears that this information is indicative of their respective market shares only as it relates to the other companies' intrastate revenues. In other words, one could only determine market share of one company by comparing its intrastate revenues with that of the various companies' intrastate revenues. Thus, I cannot conclude that each company's intrastate revenues alone derive independent economic value to its competitors. Without demonstrating that the information has independent economic value, the Wireless Carriers cannot establish that the information is a protectable trade secret.

Based on the minimal contents of the affidavits provided by the Wireless Carriers, they have not established that the intrastate revenues are protectable trade secrets subject to the disclosure exception in Indiana Code Section 5–14–3–4(a)(4). For this reason, I concur in result.