See also 276 F.3d 914.

rsc, the **QUALITY MEASUREMENT COMPANY, Plaintiff–Appellant,**

v.

**IPSOS S.A., IPSOS–ASI, and IPSOS Publicite, Defendants– Appellees.**

No. 01–3208.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2003.

Before MARTIN, Chief Circuit Judge; RYAN, Circuit Judge; and COHN, District Judge.*

COHN, District Judge.

Plaintiff rsc, The Quality Measurement Company (RSC) brought this action, arising out of a failed business relationship, for RICO Act violations, actual and constructive fraud, tortious interference with a business relationship, predatory hiring in violation of the Sherman Act, and interference with civil litigation. RSC appeals from the district court's order granting defendants IPSOS S.A., IPSOS–ASI, and IPSOS Publicité (collectively, IPSOS) summary judgment and denying RSC's request for extended discovery.

For the reasons that follow, the district court's decision is AFFIRMED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. General Background and Substantive Conduct

RSC is a privately held company headquartered in Indiana that tests television commercials before they air to evaluate their effectiveness. IPSOS S.A. is a publicly-traded international corporation headquartered in France that also tests television commercials for effectiveness before

they air. IPSOS S.A. has a number of subsidiaries, among them defendants IPSOS–ASI and IPSOS Publicité, as well as IPSOS America and IPSOS U.S.A. With respect to the market for evaluation of television commercials, RSC and IPSOS are direct competitors.

Between 1989 and 1991, RSC and IPSOS Publicité, headquartered in France, negotiated a joint venture to market television commercial testing in Europe; they were unable to reach an agreement. These negotiations were subject to written confidentiality agreements. In 1991, RSC also met with Research Services Limited and Sample Institut, market research companies located in England and Germany, respectively. At the same time, IPSOS met with the two companies independently from RSC to negotiate its own joint venture with them. RSC says IPSOS did so in order to derail RSC's negotiations with the two companies.

IPSOS revised its television commercial evaluation service, called "Pre*Vision," in September, 1991. RSC claims that IPSOS did so based on confidential, proprietary, and trade secret information learned during the negotiations with RSC and that it incorporated so much of RSC's approach (called "ARS Persuasion") that Pre*Vision was a virtual counterfeit of RSC's service.

In 1997, IPSOS S.A. formed a new holding company, IPSOS America. Then in January 1998, IPSOS America bought ASI Market Research, an American company that was a long-time competitor of RSC, and created IPSOS–ASI, Inc. as a subsidiary of IPSOS America. IPSOS–ASI began offering Next*TV, a revised version of Pre*Vision, in the United States. RSC says that IPSOS used the same trade se-

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michi-gan, sitting by designation.

crets in Next*TV that it used in Pre* Vision.

In September 1998, IPSOS–ASI hired RSC executive vice president Karl Rosenberg (Rosenberg) to work in Cincinnati, offering him a generous employment contract including a $75,000 signing bonus. Rosenberg had been with RSC for 19 years and had knowledge of its confidential, proprietary, and trade secret information. Rosenberg was hired at a time when RSC was suing IPSOS as well, as will be described in the next section.

## B. Indiana Case

Based on the alleged misappropriation, RSC brought an action in an Indiana state court in 1996 against IPSOS S.A., IPSOS Publicité, and IPSOS U.S.A. for breach of the confidentiality agreements and misappropriation of trade secrets under the Indiana Trade Secrets Act. IPSOS removed the case to the District Court for the Southern District of Indiana in January 1997. There RSC filed an amended complaint naming IPSOS America as an additional defendant and added claims against all the parties for constructive fraud, false advertising, and misappropriation under the Lanham Act.

IPSOS moved for partial summary judgment in March 1998 claiming that the state law misappropriation claims were time-barred.

As noted above, IPSOS–ASI hired Rosenberg in 1998 while the Indiana case was pending. Rosenberg was the RSC executive in charge of investigating and proceeding against IPSOS and therefore had the most knowledge of the Indiana case of anyone in RSC. RSC claims that Rosenberg was a crucial witness in the Indiana case and that IPSOS–ASI hired Rosenberg for the purpose of interfering with its ability to prosecute the Indiana case. RSC had informed IPSOS S.A., IP-SOS Publicité, and IPSOS U.S.A. prior to the hiring that Rosenberg was a potential material witness in the Indiana case. In September 1998, IPSOS answered a discovery interrogatory stating that it had it had no intention to hire any RSC employees, though it had already begun negotiations with Rosenberg. Rosenberg then assisted IPSOS in its defense in the Indiana case. RSC has sued Rosenberg separately in an Indiana state court for breach of fiduciary duties, misappropriation of trade secrets, unfair competition, and constructive fraud; IPSOS has agreed to pay Rosenberg's legal costs in that action, which is still pending.

In February 1999, RSC filed an amended complaint in Indiana to include IPSOS America as defendant and to add more claims of constructive fraud for simultaneously negotiating with European competitors, false advertising under the Lanham Act for the Pre*Vision ads, and unfair competition under the Lanham Act for tortious interference with RSC's relationship with RSL and Sample by intentionally inducing them to breach their agreement with RSC.

The district court granted IPSOS Publicité and IPSOS S.A. summary judgment on the state law trade secret claims, holding they were time-barred. After a trial on the remaining claims, the jury returned a verdict in favor of IPSOS on all of its claims and made special findings of fact, among them that RSC never disclosed any trade secrets to IPSOS and that IPSOS developed its product independently.

Following the jury's verdict, RSC moved for sanctions in Indiana claiming that IP-SOS had employed tactics to deny RSC a fair trial, including hiring Rosenberg. The Indiana district court denied the motion, and the Seventh Circuit affirmed. *Re-*

*search Systems Corp. v. IPSOS,* 276 F.3d 914 (7th Cir.2002).

## C. Ohio Case

RSC brought this action in the Southern District of Ohio March 19, 1999, while the Indiana case was pending. In Ohio, RSC alleged RICO violations, actual fraud, constructive fraud, and tortious interference with a business relationship based on the sale of Next*TV and IPSOS–ASI's hiring of Rosenberg.

On May 18, 1999, IPSOS–ASI filed a motion to transfer venue.[2] IPSOS–ASI said there was substantial overlap with the Indiana case and argued it would be in the interests of the parties, judicial economy, and manifest justice to transfer this case to Indiana. The district court denied the motion because it found the plaintiff's choice of forum deserved more weight than the limited judicial resources that would be saved by a transfer. The district court said that the judicial economy to be gained by transferring the case to Indiana was *de minimis,* because counsel had indicated that in the event of a transfer they would not move to consolidate the transferred case with the case pending in Indiana. The parties would have to prepare for two trials either way.

RSC amended its complaint to add claims for another RICO Act violation, an antitrust violation for predatory hiring practices, and tortious interference with civil litigation by spoliation of evidence.

IPSOS filed a motion for summary judgment, which the district court granted. The court found that RSC's claims for RICO Act violations, fraud, tortious interference with business, and spoliation of evidence were all precluded by the deci-

sion in the Indiana case and that the predatory hiring practice claim was insufficient as a matter of law. It also denied RSC's request for extended discovery. RSC then appealed to this court.

## II. ANALYSIS

## A. Preclusive Effect of the Indiana Case: RICO, Fraud, Tortious Interference with Business, and Spoliation of Evidence

### 1. Standard of Review

We review summary judgment *de novo. Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). Review of dismissal of claims on the basis of *res judicata,* whether for issue or claim preclusion, is de novo. *Kane v. Magna Mixer Co.,* 71 F.3d 555 (6th Cir.1995); *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir.1994).

### 2. Law of *Res Judicata*

When a federal court is sitting in diversity and state substantive law is at issue, the federal court's judgment should be accorded the same preclusive effect as a state court's judgment would have. *Semtek International Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). While the Supreme Court found that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity," *id.* at 508, it also held that under federal common law state preclusive law must be applied when state substantive law is at issue, absent incompatibility of the state law and federal interests.[3] *Id.* at 508–09.

---

**2.** IPSOS also moved, in the alternative, to dismiss the case for failure to state a claim. The district court found that RSC had stated a claim and denied that part of the motion.

**3.** The Supreme Court wrote that Fed.R.Civ.P. 41(b) did not determine the preclusive effect of a California case because "it is no longer true that a judgment 'on the merits' is neces-

Here the previous claims for breach of contract and misappropriation of trade secrets were governed by Indiana state law, and both the Indiana district court and the district court here were sitting in diversity. The Indiana district court's judgment is therefore entitled to the same preclusive effect an Indiana state court's judgment would receive.

### a. Issue Preclusion

Issue preclusion, or collateral estoppel, "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind.Ct.App.2000) (citing *Slutsky v. Crews*, 713 N.E.2d 288, 291 (Ind.Ct.App.1999)). The elements of issue preclusion in Indiana are as follows: 1) a final judgment on the merits in a court of competent jurisdiction; 2) identity of the issues; and 3) the party to be estopped was a party or the privity of a party in the prior action.... In determining whether the defensive use of collateral estoppel is appropriate, the court must also consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.

*Id.* (citing *Adams v. Marion County Office of Family and Children*, 659 N.E.2d 202, 205 (Ind.Ct.App.1995), internal citations omitted).

The parties do not dispute that the Indiana trial resulted in a final judgment in a court of competent jurisdiction. RSC contends that the decision was not a judg-

ment on the merits, however, because it did not have a full and fair opportunity to litigate the issue due to IPSOS's litigation misconduct, including hiring Rosenberg. RSC also disputes, on a claim-by-claim basis, whether the issues are identical. RSC does not dispute, however, that the second action is between the same parties or their privies.[4]

### b. Claim Preclusion

The elements of claim preclusion in Indiana are as follows:

1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id.* at 26. All IPSOS needs to show is that the claims in issue *could* have been litigated in the first action, not that they actually were. *Id.* In comparison, the more forgiving federal rule for claim preclusion is whether the second action raises an issue "actually litigated" or one which "*should have been litigated*" in the first action. *Sanders Confectionaey Prods. v. Heller Fin.*, 973 F.2d 474, 480 (6th Cir.1992) (emphasis added).

The parties do not dispute that the first judgment was rendered by a court of competent jurisdiction or that it was between the same parties or their privies. RSC argues, as it does against issue preclusion, that the Indiana judgment was not rendered on the merits because it was based on unfair trial practices by IPSOS. RSC

---

sarily a judgment entitled to claim-preclusive effect." *Id.* at 503, 121 S.Ct. 1021.

4. IPSOS–ASI was not a party to the Indiana case, but it is a privy to its parent, IPSOS S.A., which was a party to that case.

also argues, on a claim-by-claim basis, that the third element, whether matters now in issue were or could have been determined in the first action, is not met.

### c. Fairness of the Indiana Proceedings

 RSC's contention, common to all of its claims, is that the Indiana proceedings were so marred by IPSOS's misconduct that they should not be given preclusive effect. This contention is without merit. RSC is essentially arguing that it should get a new trial simply because the first one was not fair. First, the Seventh Circuit found that the Indiana case was fair. *Research Systems Corp. v. IPSOS*, 276 F.3d 914, 920 (7th Cir.2002) (affirming the district court). Second, the purpose of *res judicata* is to preclude exactly this sort of case; parties cannot relitigate an issue or claim simply because they believe the court or jury reached an incorrect result in the first case. The law provides finality to the parties by insisting they raise complaints about litigation while the case is pending. RSC should have raised the issue of unfairness in the first action, and it may not do so now.[5]

A claim by claim analysis follows for the remaining elements of issue and claim preclusion.

### 3. RICO Violations

IPSOS argues that the jury verdict in Indiana conclusively established that it did not commit any of the predicate acts proffered by RSC as the basis for RSC's RICO claims in the present case. RSC responds that there are additional new predicate acts for the RICO claims.

### a. Issue Preclusion

 RICO claims may be dismissed where the alleged predicate acts or other underlying facts were already litigated in a prior lawsuit between the parties. *See, e.g., Saud v. Bank of New York*, 929 F.2d 916 (2d Cir.1991); *County of Cook v. Mid-Con Corp.*, 773 F.2d 892 (7th Cir.1985). The allegations underlying RSC's RICO claims in Ohio were mostly raised by RSC in the Indiana trial and were rejected by the jury. As to all of the predicate acts addressed in the Indiana case, the RICO claims stemming from them are therefore barred by issue preclusion.

### b. Claim Preclusion

 RSC says its RICO claims are also based on certain predicate acts not covered in the Indiana case, in particular witness tampering, obstruction of justice, bribery of a witness, unlawful provision of a gratuity, travel in aid of racketeering, and interstate transportation of stolen goods. Although these claims were not actually made in the Indiana case, they, too, easily *could* have been addressed there. RSC knew of these alleged predicate acts well before the Indiana trial started, and they are closely related to the wrongful acts it did claim in the Indiana case. Because it did not join these related claims when it could have done so, the claims are now barred by claim preclusion.

### 4. Actual and Constructive Fraud

 RSC argues that the fraud alleged in this case concerns behavior from a period of time (1997–1998) significantly different from the period of time of the events covered by the Indiana case (1989–1991), so issue preclusion should not apply. While it is true that the fraud claims here

---

5. If it had not learned of the alleged unfairness until after the trial, the result might not be the same, but here RSC knew of it at the

time and even complained of it in the Indiana case.

are based on different statements than the Indiana fraud claims, to award damages in both cases requires a finding that Pre*Vision incorporates RSC technology. The Indiana jury expressly rejected that finding in its answers to the special interrogatories, in which it found that IPSOS independently developed Pre*Vision. RSC's claims for actual and constructive fraud are therefore barred by issue preclusion, as an essential element of its claim has already been determined against it.

### 5. Tortious Interference with a Contract or Business Relationship: Karl Rosenberg

RSC makes essentially the same argument here as it did for its fraud claim: the claim in the present action arises out of transactions and occurrences that took place during the Indiana case, which was years after the transactions and occurrences that were the basis of the Indiana case.

Indiana recognizes a claim for tortious interference with a business relationship or contract. *Winkler v. Reed & Sons,* 638 N.E.2d 1228 (Ind.1994). The elements of the claim are (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Id.* at 1235 (citing *Daly v. Nau,* 167 Ind.App. 541, 339 N.E.2d 71 (1975)).

■ Competitors are free to hire away at-will employees, however, so long as they do not use "wrongful means" or do so for "wrongful purposes," reflecting the

fifth element's requirement that there be a wrongful inducement for the breach. *See Harvest Life Ins. Co. v. Getche,* 701 N.E.2d 871, 877 (Ind.Ct.App.1998). RSC's tortious interference claim alleges that IPSOS had the following three wrongful purposes for hiring Rosenberg: (1) to obstruct justice by disrupting the Indiana litigation, (2) to defraud RSC of trade secrets, and (3) to restrain trade unlawfully. IPSOS argues that the Indiana case resolved that it had none of these purposes.

RSC should have raised its concerns about the obstruction of justice in the Indiana case, not waited to bring it later. *See* discussion on fairness, section II.A.2.c., *supra; Levinson v. Citizens Nat. Bank of Evansville,* 644 N.E.2d 1264 (Ind.Ct.App. 1994). RSC's motions for a new trial and for sanctions based on IPSOS's alleged abuses were both denied by the district court in Indiana. Even though those decisions are not in the record and may have been decided on grounds irrelevant to this action, they show that RSC could, and should, have brought its complaints of misconduct at that time.[6]

The next wrongful reason asserted by RSC is an alleged attempt by IPSOS to defraud RSC of its trade secrets. The trade secrets that RSC claims IPSOS received from Rosenberg are the same trade secrets it claimed in the Indiana case that IPSOS stole. The Indiana jury found that IPSOS never even had access to any of RSC's alleged trade secrets, so the alleged wrongful purpose is precluded by the Indiana case.

RSC last claims that IPSOS hired Rosenberg to restrain trade. The District Court properly ruled that those allegations fail as a matter of law under the Sherman Act because hiring just one employee is

---

**6.** We need not address IPSOS's argument that the district court's ruling on RSC's motion in limine to preclude Rosenberg's testimony has preclusive effect on RSC's obstruction of justice claim.

insufficient as a matter of law to establish predatory conduct under the Sherman Act. *American Prof. Testing Serv., Inc. v. Harcourt Brace Janovich Legal & Prof. Pub., Inc.*, 108 F.3d 1147, 1153 (9th Cir. 1997).

### 6. Spoliation of Evidence: Karl Rosenberg

#### a. Issue Preclusion

IPSOS argues the spoliation claim is precluded by the jury verdict on the misappropriation of trade secrets claim and the Indiana court's denial of RSC's motion in limine to exclude Rosenberg's testimony.

#### i. Misappropriation of Trade Secrets

■ The elements of misappropriation of trade secrets and spoliation are different and require different facts to prove them. For the breach of contract and misappropriation claims raised in the Indiana case. RSC was required to prove 1) a confidentiality agreement existed between RSC and IPSOS, 2) the existence of RSC's trade secrets, 3) the appropriation and misuse of those trade secrets by IP-SOS, and 4) damages to RSC.

The elements of spoliation of evidence in Indiana are 1) a relationship between the parties that creates a duty to refrain from destroying evidence and 2) foreseeability that the destroyed evidence would become the focus of subsequent litigation. *Burton v. Estate of Davis*, 730 N.E.2d 800, 805–06 (Ind.App.2000).[7] The elements of the spoliation claim were not resolved in the

Indiana case, so issue preclusion does not bar the Ohio claim.

#### ii. Motion in Limine

■ IPSOS argues that the Indiana trial court's decision to allow Rosenberg to testify shows that it must not have spoliated the testimony he would have given for RSC. RSC argues that the motion in limine addressed a different matter than the one at issue here and that it was not a final adjudication on the merits of the spoliation issue.

Although the Indiana district court decided that Rosenberg was qualified to testify as a witness, that does not necessarily mean that IPSOS did nothing improper in hiring him. Evidentiary presumptions or discovery sanctions based on spoliation were not before the Indiana trial court.

#### b. Claim Preclusion

RSC argues that claim preclusion does not bar its claim of spoliation of evidence because both Indiana and Ohio allow separate tort actions for spoliation independent from the underlying claim due to a strong public policy disfavoring the destruction of evidence. IPSOS argues that the spoliation claim is barred because it is based on alleged misconduct in the Indiana case that RSC knew about before that suit went to trial and that RSC could have asserted in that trial.

#### i. Precedent

In general, a party may not address the litigation-related misconduct of the oppos-

---

7. It is immaterial whether the trial court would have applied Indiana or Ohio law on spoliation of the evidence, as neither one has the same elements as the misappropriation of trade secrets claims. In Ohio, the elements of spoliation are 1) pending or probable litigation involving the plaintiff, 2) knowledge on the part of the defendant that litigation exists

or is probable, 3) wilful destruction of evidence by defendant designed to disrupt the plaintiff's case, 4) disruption of the plaintiff's case, and 5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993).

ing party in a separate action, but must instead raise its complaints in the first action. *Levinson v. Citizens Nat. Bank of Evansville,* 644 N.E.2d 1264 (Ind.Ct.App. 1994). Despite this general disinclination to try litigation-related misconduct separately, a claim for spoliation of evidence is a cognizable separate cause of action. *Burton v. Estate of Davis,* 730 N.E.2d 800 (Ind.App.Ct.2000). This seeming inconsistency can be reconciled easily, however, as parties may attach the separate claim to the underlying case, thus maintaining two separate causes of action in one case. *See, e.g., id.* (plaintiff amended its claims in the same proceeding to bring a claim for spoliation).

A separate, subsequent claim for the spoliation of evidence may be allowed "only when evidence of spoliation is not discovered until after the conclusion of the primary action." *Davis v. Wal–Mart Stores, Inc.,* 93 Ohio St.3d 488, 756 N.E.2d 657, 660 (2001). The determinative issue is whether the plaintiff could have brought its spoliation claim in the previous action. *Id.; see also Cedars–Sinai Medical Center v. Superior Court,* 18 Cal.4th 1, 74 Cal. Rptr.2d 248, 954 P.2d 511, 521 (1998) (holding that when the party learns of spoliation prior to trial, it may not pursue a separate tort action). Thus, if a litigant becomes aware of misconduct before a case goes to trial, that litigant must assert any claim arising from the misconduct in the same proceeding or forego it entirely.

 Here RSC knew of IPSOS's alleged spoliation of Rosenberg's testimony for more than a year before the start of the trial in Indiana. IPSOS has shown the critical issue, that RSC *could* have brought the action in the first trial. Moreover, RSC should have raised the spoliation claim in Indiana because it was closely related to the claims and motions it brought in that case, including its motion

to suppress Rosenberg's testimony. The Indiana court was familiar with the issues and parties and would have been in a better position to resolve the dispute than the Ohio court.

### ii. Public Policy of Allowing a Separate Cause of Action

RSC argues Indiana's and Ohio's public policy of allowing a separate tort claim for spoliation of evidence indicate that it should be able to bring its claim separately here. Virtually all jurisdictions discourage spoliation of evidence through discovery sanctions or evidentiary inferences, but unlike most jurisdictions, Indiana and Ohio do not restrict victims to only these remedies; they allow the victim of spoliation to seek tort damages in a separate action. *See* Tucker, R., "The Flexible Doctrine of Spoliation of Evidence: Cause of Action, Defense, Evidentiary Presumption, and Discovery Sanction," 27 U. TOL. L.REV. 67 (1995); *Burton v. Estate of Davis,* 730 N.E.2d 800 (Ind.App.2000); *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993).

The reason for allowing a separate claim may be that a separate tort for spoliation with the possibility of punitive damages does more to prevent litigation-related misconduct because discovery sanctions and evidentiary presumptions just put the parties in the position they would have been in but for the spoliation. *See* Nesson, C., "Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Action," 13 CARDOZO L.REV. 793 (1991); *Moskovitz v. Mt. Sinai Medical Ctr.,* 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994) (holding that "the act of altering and destroying records to avoid liability ... is particularly deserving of punishment in the form of punitive damages"). Spoliation is an independent tort, however, only in the sense that a plaintiff may as-

sert it as a "stand-alone" cause of action in a complaint. It is the fact of tort damages that serves as a deterrent, not the fact that a party may bring the claim separately. The public policy for allowing a tort claim thus does not conflict with *res judicata* law requiring that separate claim to be brought in the same action.

### iii. Ramifications of Requiring the Actions to be Joined

Finally, RSC argues that the spoliation claim should not be dismissed because dismissal would lead to unjust results. RSC first argues that the district court's refusal of IPSOS's motion to transfer venue is inconsistent with its later decision that RSC should have brought this claim in Indiana. RSC, however, is not in a position to challenge the district court on any such inconsistency; RSC opposed IPSOS's motion to transfer, and that motion was denied based in part on RSC's declaration that even if the case were transferred, it did not intend to join the claims to the Indiana case.

Second, RSC notes that the plaintiff should primarily control the litigation with respect to when and where it is filed, subject only to the statute of limitations and to considerations of jurisdiction and venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). RSC argues that a rule requiring the plaintiff to bring a spoliation claim together with the underlying action creates a shortened statute of limitations of judicial, not legislative, creation, which is disfavored, and that forcing a plaintiff to amend its underlying action could likely lead to a delay in the trial of the pending claims. While this argument has merit, Ohio and Indiana case law clearly indicate that so long as the spoliation is discovered before the trial is underway, the parties are deemed to have sufficient time to make

their case. *See Burton v. Estate of Davis*, 730 N.E.2d 800 (Ind.App.Ct.2000); *Davis v. Wal–Mart Stores, Inc.*, 93 Ohio St.3d 488, 756 N.E.2d 657, 660 (2001). Here the alleged spoliation was discovered eighteen months before trial.

Third. RSC argues forcing it to join the new spoliation claim to its original action forces it to bring the spoliation claim in a jurisdiction that cannot require the in-person attendance of witnesses at trial. Here two executives of IPSOS–ASI would be key RSC witnesses on cross examination at trial. IPSOS–ASI is headquartered in Cincinnati, so these executives would be subject to subpoena in Ohio, but not in Indiana. RSC could, however, depose them in Ohio and cross examine them via speaker phone or video phone.

Precedent indicates that RSC should have brought the spoliation claim in the first action because it was discovered eighteen months prior to that trial, and RSC's policy arguments are insufficient to outweigh the precedent holding contrary to its position.

### B. Predatory Hiring Practices

RSC's claim that IPSOS engaged in predatory hiring practices is not barred by res judicata, and IPSOS does not argue on appeal that it is. The district court properly granted summary judgment on the claim for the reasons stated in the district court's opinion. *See also American Prof. Testing Serv., Inc. v. Harcourt Brace Janovich Legal & Prof. Pub., Inc.*, 108 F.3d 1147, 1153 (9th Cir.1997) (holding that hiring just one employee is insufficient as a matter of law to establish predatory conduct under the Sherman Act).

### C. Extension of Time to Allow Discovery

Finally, RSC argues that the district court erred by denying its motion to allow

discovery, because RSC says the discovery was necessary for the court to reach a final determination on IPSOS's motion. IPSOS argues that the district court did not abuse its discretion in denying RSC's request for an extension of time to conduct discovery because preclusion based on *res judicata* is not influenced by discovery.

A party opposing a motion for summary judgment "possesses no absolute right to additional time for discovery under Rule 56," and we review the denial of such a request only for an abuse of discretion. *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir.1989). We have held that it is an abuse of discretion for a district court to grant summary judgment in the face of a party's demonstrated need for additional discovery. *Glen Eden Hospital, Inc. v. Blue Cross and Blue Shield of Michigan, Inc.*, 740 F.2d 423 (6th Cir.1984).

The purpose of *res judicata* is to eliminate the relitigation of claims—not just to avoid inconsistent results, but also to avoid the expense of a trial, which includes discovery. *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593–94 (7th Cir.1986). Because RSC could have brought its current claims in the first trial, but did not, the claims are barred. No amount of discovery will change the preclusive effect of the Indiana case on the current case, so the trial court did not abuse its discretion in denying the motion to extend discovery.

### III. CONCLUSION

The district court properly held that *res judicata* bars all of RSC's current claims except for predatory hiring and that RSC has failed to allege sufficient facts to state a claim for predatory hiring. An extension of discovery would not have assisted the district court in reaching that determination, so it did not abuse its discretion in denying an extension.

The district court's decision is therefore AFFIRMED in all respects.