Scott ROBINSON, M.D.,
Appellant–Plaintiff,

v.

INDIANA UNIVERSITY, Indiana University–Purdue University at Indianapolis, Indiana University School of Medicine, the Indiana University Purdue University at Indianapolis Animal Care and Use Committee, School of Medicine Subcommittee of the Indiana University–Purdue University at Indianapolis Animal Care and Use Committee, Appellee–Defendant.

No. 49A02–9306–CV–253.

Court of Appeals of Indiana.

Dec. 11, 1995.

Beth Robinson, Langrock Sperry & Wool, Middlebury, Vermont and Jay D. Robinson, Jr., Indianapolis, for Appellant.

Albert J. Velasquez, Bloomington, for Appellee.

## OPINION

KIRSCH, Judge.

Dr. Scott Robinson appeals the trial court's determination that certain public records maintained by Indiana University (I.U.) are excepted from disclosure under Indiana's Access to Public Records Act.[1] We previously decided that Dr. Robinson was not entitled to attend meetings of I.U.'s Animal Care Committee under Indiana's Open Door Law.[2] *See Robinson v. Indiana University* (1994), Ind.App., 638 N.E.2d 435. We remanded the public records issue to the trial court for clarification of its ruling in light of its *in camera* review of certain documents. Having received the trial court's findings of fact and conclusions on that issue,[3] we now consider the trial court's determination that

Robinson is not permitted access to the records he seeks.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Indiana University–Purdue University at Indianapolis Animal Care and Use Committee (the Committee) and the School of Medicine Subcommittee of that Committee (the Subcommittee) are responsible for reviewing research projects that involve the use of animals. The Committee and Subcommittee meet regularly to review all proposed new research, modifications to previously approved research applications, and to review ongoing research. Of particular relevance is the Committee and Subcommittee's review of Animal Care and Use Applications submitted by potential researchers detailing the researchers' proposed use of animals in research projects. In the five years preceding commencement of the present action, the Committee and Subcommittee reviewed 1,979 such applications.

Robinson wrote I.U. officials, requesting permission to attend meetings of the Committee and Subcommittee at which the research applications were to be discussed. Robinson also requested permission to review nine categories of documents associated with the use and care of animals in research projects and the workings of the Committee and Subcommittee.

The Committee Chairperson, Dr. George Stookey, responded to Robinson's requests. Dr. Stookey supplied Robinson with generalized information concerning I.U.'s use of animals, but did not provide any information in connection with individual research projects. Dissatisfied with Dr. Stookey's response, Robinson, through his legal counsel, wrote University Counsel Linda Redman, clarifying his original requests and seeking additional documents. Ms. Redman provided a written response to Robinson's requests,

---

1. IC 5–14–3–1 to –10.

2. IC 5–14–1.5–1 to –8.

3. We recognize that special findings are not required in summary judgment proceedings and are not binding on appeal. *Watters v. Dinn*

(1994), Ind.App., 633 N.E.2d 280, 285, *trans. denied.* In this instance, however, we cannot adequately review the trial court's decision without some insight into its *in camera* inspection. We requested the findings solely to facilitate appellate review.

stating that every effort was being made to provide Robinson with the information he requested "without releasing confidential information concerning research." *Record* at 34. Ms. Redman stated: "If the information requested is only available as a part of individual research projects, it has not been provided. It is our position that your client may not review individual research protocols and applications to compile the statistics he is requesting." *Record* at 34. While Ms. Redman provided a variety of information describing the workings of the Committee and animal use in general, she failed to provide Robinson with the completed Animal Care and Use Applications and other information related to individual research projects.

Robinson subsequently filed the present declaratory judgment action. He asked the trial court to find that the documents I.U. refused to provide were subject to disclosure under the Public Records Act. Robinson also sought to enjoin any continuing, threatened or future violations of the Public Records Act. The trial court denied Robinson's subsequent summary judgment motion, and, instead, entered summary judgment in favor of I.U. The trial court found that the records at issue are excepted from public disclosure under the Public Records Act.

On remand, the trial court entered findings and conclusions in support of its determination that the records are excepted from disclosure. The court noted Robinson's acknowledgment that he had received all of the applications related to animals used for teaching. The only applications at issue, then, are those related to the use of animals for research.

### ISSUE

The issue presented is whether the completed Animal Care and Use Applications submitted to the Committee and Subcommittee, and any references to particular research projects in the meeting minutes of those committees, are exempt from disclosure under Indiana's Public Records Act.

### DISCUSSION AND DECISION

■ Whether Dr. Robinson should be permitted access to the public records at issue is governed by IC 5–14–3–4(a) (1991 Supp.) which provides in pertinent part:

"(a) The following public records are excepted from section 3 of this chapter and may not be disclosed by a public agency, unless access to the records is specifically required by a state or federal statute or is ordered by a court under the rules of discovery:

. . . .

(6) Information concerning research, including actual research documents, conducted under the auspices of an institution of higher education, including information:

(A) concerning any negotiations made with respect to the research; and

(B) received from another party involved in the research."

The parties do not dispute that the documents at issue constitute public records. They also do not dispute that I.U. is a public agency. The parties' sole disagreement is over whether the documents at issue concern research within the meaning of IC 5–14–3–4(a)(6).

■ Resolution of this case is grounded in principles of statutory construction. Our goal in construing a statute is to give effect to the legislative intent. IC 1–1–4–1 (1991 Supp.); *Figg v. Bryan Rental Inc.* (1995), Ind.App., 646 N.E.2d 69, 72–73, *trans. denied.* To achieve that end, we must "consider the goals of the statute, and the reasons and policy underlying the statute's enactment." *Indiana State Police Dep't v. Turner* (1991), Ind.App., 577 N.E.2d 598, 601, *trans. denied.*

■ Robinson argues that the "concerning research" exception should be construed narrowly in keeping with the express policy statement contained in the statute. That statement provides:

"A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the

state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record."

IC 5–14–3–1 (1988 Ed.). It is easy to ascertain from this legislative statement the policy and reasons underlying the Public Records Act. "The Act clearly indicates that the public is to have access to the affairs of government and the official acts of those who represent them." *Heltzel v. Thomas* (1987), Ind.App., 516 N.E.2d 103, 106, *trans. denied* (1988), Ind., 529 N.E.2d 345.

██ The difficulty we face is that the legislature has articulated a liberal construction policy, yet has enacted a myriad of broad exceptions. Liberal construction of a statute requires narrow construction of its exceptions. *See* Eric J. Graninger, Note, *Indiana Opens Public Records: But (b)(6) May Be the Exemption That Swallows the Rule*, 17 Ind.L.Rev. 555, 574 (1984). In the context of public disclosure laws, this court has explained:

> "[E]xceptions to a statute and its operation should be strictly construed by placing the burden of proving the exception upon the party claiming it.
>
> "Other states, in examining their respective 'Open Door' or 'Sunshine' laws, follow these same mandates, particularly the principle of strict construction of statutory exceptions."

*Common Council of City of Peru v. Peru Daily Tribune, Inc.* (1982), Ind.App., 440 N.E.2d 726, 729 (citations omitted). Nonetheless, "[l]iberal construction does not mean that expressed exceptions specified by the legislature are to be contravened." *Heltzel*, 516 N.E.2d at 106.

To aid in our construction of the statutory exception, we have looked to other jurisdictions who have considered similar facts. Of particular similarity is *S.E.T.A. UNC–CH, Inc. v. Huffines* (1991), 101 N.C.App. 292, 399 S.E.2d 340, in which a student organization sought access to various documents of the Institutional Animal Care and Use Committee that related to the care and use of animals in scientific experiments. The Committee Chairman refused to provide the application forms submitted for four particular experiments. The North Carolina Court of Appeals held that the applications must be disclosed, but the court required redaction of information that could be patented and of personal information identifying the researcher and any staff members. *Id.*, 399 S.E.2d at 342–43. The court also held that the information contained in the applications did not constitute trade secrets under North Carolina's Public Records Law (N.C.Gen. Stat. § 132–1 to –9). *Id.*, 399 S.E.2d at 343.[4]

██ There is a critical distinction between the present case and *S.E.T.A.* which dictates against following North Carolina's precedent: North Carolina's Public Records Act does not contain a concerning research exception. Indiana's inclusion of the concerning research exception, in addition to a trade secret exception, *see* IC 5–14–3–4(a)(4), indicates the legislature's intent to extend nondisclosure to a larger number of records. Some records may not be of a proprietary nature

---

4. Two other cases have involved facts similar to those in the present case, but were resolved on different grounds. In both *American Soc'y for the Prevention of Cruelty to Animals v. Board of Trustees of the State Univ. of New York* (1992), 184 A.D.2d 508, 584 N.Y.S.2d 198, *leave to appeal denied* (1992), 80 N.Y.2d 757, 589 N.Y.S.2d 308, 602 N.E.2d 1124, and *Animal Legal Defense Fund, Inc. v. Institutional Animal Care and Use Comm. of the Univ. of Vermont* (1992), 159 Vt. 133, 616 A.2d 224, the courts addressed whether the university committees were subject to the state's public records law in the first instance. In the New York case, the committee was held not to be an "agency" subject to the applicable freedom of information law. 584 N.Y.S.2d at 199. In the Vermont Case, the supreme court upheld the trial court's determination that the University's Institutional Animal Care and Use Committee was subject to the state's Public Records Act, although the disclosure of particular documents was not discussed. 616 A.2d at 227. These cases are of little assistance in the present case because there is no dispute over whether I.U. is subject to Indiana's Public Records Act.

so as to constitute a trade secret, but may be of a scientific or experimental nature so as to concern research. The latter category of documents would fall into the concerning research exception, and, thus, would not be subject to disclosure.

The application at issue here consists of four pages. The first page seeks background information concerning the researcher, the name and type of research project, and the funding source. Page two asks the researcher to "please provide a brief, concise, lay-oriented statement outlining the purpose of the research project ... and the animal use in it." *Record* at 172. Page two also contains a list of eleven questions in yes or no format. The questions seek the following information concerning the procedures to be used in the research: 1) whether invasive procedures other than major recovery surgery are contemplated; 2) whether major surgery is contemplated; 3) whether serious natural or experimentally-induced disease will be involved; 4) whether procedures involving pain or discomfort will be used; 5) whether *in vitro* or other alternative procedures are available; 6) whether prolonged restraint is required; 7) whether the husbandry is unavailable or inappropriate in the researcher's facility; 8) whether the project duplicates previous research; 9) whether the project requires radioactive materials; 10) whether the project requires hazardous agents; and, 11) whether personnel have been appropriately trained for the use of animals.

Page three of the application allows space for a written explanation of an affirmative answer to any of the first seven of the questions on page two. Also on page three, the researcher is required to list "all animal use procedures with a description of those that deviate from established and commonly accepted techniques." *Record* at 173. On page four, the researcher must provide a

brief justification for his or her choice of species and the number of animals requested. The researcher must also provide information concerning the animals' housing location. Finally, the researcher must explain whether a veterinarian has been consulted, the procedures contemplated to minimize discomfort and pain to the animal, the contemplated method of disposition of the animal, and the anticipated method of any euthanasia to be employed.

We agree with the trial court's determination that the information sought by the research applications was "information concerning research conducted by [or] under the auspices of Indiana University." *Record* at 4–5. The application seeks information about the researcher, the nature of the proposed or ongoing research project, and procedures to be employed throughout the project. The sole subject matter of the application is a research project and related personnel and procedures. Even in the narrowest sense, the information sought by the application concerns research. As such, it was not subject to disclosure under the Public Records Act.[5]

Affirmed.

STATON and HOFFMAN, JJ., concur.

---

5. Also at issue were the minutes from the meetings of the Committee and Subcommittee that have not been redacted to delete all references to specific research projects. The trial court, however, did not make any specific findings concerning these minutes. On appeal from a summary judgment, we stand in the shoes of the trial court, and have the authority to determine whether the minutes are subject to unredacted disclosure under the Public Records Act. *See Austin v. Old Nat'l Bank* (1995), Ind.App., 656 N.E.2d 886, 887 n. 2. At oral argument, Robinson's counsel described the redactions as a blacking out of any reference to the names of research projects contained in the minutes. The title of a research project concerns the subject research and need not be disclosed under the Public Records Act.