INDIANA BELL TELEPHONE CO., INC., d/b/a SBC Indiana, Appellant–Petitioner,

v.

INDIANA UTILITY REGULATORY COMMISSION and Office of Utility Consumer Counselor, Appellees–Respondents.

No. 93A02–0306–EX–484.

Court of Appeals of Indiana.

June 30, 2004.

Peter J. Rusthoven, Teresa E. Morton, Claudia J. Earls, Mark J. Crandley, Barnes & Thornburg, Bonnie K. Simmons, Indiana Bell Telephone Company, Incorporated, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Today we hand down two cases addressing the issue of whether certain information provided to the Indiana Utility Regulatory Commission (IURC) by telephone companies should be afforded trade secret or confidential information protection. In this case, appellant-petitioner Indiana Bell Telephone Company, Inc., d/b/a SBC Indiana (SBC) appeals from an order issued by the IURC denying its request to maintain the confidentiality of certain business data that had been submitted to the IURC. Specifically, SBC maintains that the order should have been granted because the information provided to the

IURC constituted competitively sensitive trade secret material and a preliminary ruling had been made determining that the same information had been entitled to confidential treatment in an IURC order that was not challenged by any SBC competitor. SBC also argues that the order is contrary to law because the IURC failed to set forth its reasons for deviating from the rebuttable presumption that SBC's information was entitled to trade secret protection.

Based upon our review of the record, we conclude that the findings were sufficient to support the IURC's determination that the SBC information did not constitute trade secrets that is protected from public disclosure. We also observe that the IURC's rationale set forth in the order for departing from established precedent that there is a rebuttable presumption that SBC's data was entitled to trade secret protection does not warrant a reversal. Thus, we affirm the judgment of the IURC. We similarly hold in a companion case, *Cellco Partnership et al. v. Indiana Utility Regulatory Commission*, No. 93A02–0307–EX–639, 810 N.E.2d 1137, 2004 WL 1465624 (Ind.Ct.App. June 30, 2004).

## FACTS

SBC is a telephone company that is subject to the IURC's statutorily delegated regulatory jurisdiction. The IURC is required to provide information regarding competition in the telephone industry to the General Assembly's Regulatory Flexibility Committee (the Committee) pursuant to Indiana Code section 8–1–2.6–4. Specifically, the statute requires the IURC to annually prepare for presentation to the Committee, an analysis of the effects of competition among telephone companies on universal service and on pricing of all

telephone services under the jurisdiction of the IURC. To satisfy this requirement, the IURC distributed a Local Competition Survey that was to be completed by all telephone companies doing business in Indiana. Pursuant to that survey, SBC and other companies filed petitions for protection of confidential information in 2002 and 2003, requesting that the data supplied should be deemed trade secrets that are exempt from public disclosure. In support of its argument, SBC contended that the requested information could permit a competitor to determine the number of access lines and thus reveal the SBC customers in each portion of its service area. Thus, such information would enable the competitors to evaluate market potential and make pricing decisions based upon that data.

On May 8, 2003, the IURC entered an order denying SBC's petitions for protection of the information. No hearing was held and no in camera inspection was conducted.[1] The order provided that the IURC report to the Committee using the responses from the Local Competition Survey is a public record that could be disclosed. Moreover, the order provided that the survey responses did not fit into the trade secret exception to the Public Records Act. In relevant part, the order provided as follows:

A difficulty this Commission and other Indiana public agencies face is that of reconciling a public records statute that is to be construed liberally in favor of disclosure with that same statute's broad exceptions to disclosure. Indiana Courts have responded to this issue by stating that: 'Liberal construction of a statute requires narrow construction of its exceptions.' *Robinson v. Indiana Univ.*, 659 N.E.2d 153, 156 (Ind.App. 1995). The United States Supreme

1. While the IURC points out that SBC could have requested an in camera inspection in accordance with 170 IAC 1–1.1–4(c), it did not do so.

Court has made this same evaluation of its Freedom of Information Act (FOIA), the federal counterpart to our Access to Public Records Act.

Appellant's Br. p. 27.

Referring specifically to the trade secret exception in FOIA, which exempts from public disclosure 'trade secrets and commercial or financial information obtained from a person and privileged or confidential,' 5 U.S.C. § 552(b)(4), the Seventh Circuit Court of Appeals has said that a literal reading of the trade secret exemption 'would shield virtually every document that a company chose not to make public; but the cases interpreting the provision have narrowed it considerably by holding that information that is not a traditional type of trade secret (of the secret-formula variety) is within exemption 4 (trade secret exemption) only if disclosure would either inflict substantial competitive harm on the owner of the information or make it difficult for the agency to induce people to submit similar information to it in the future.' *General Electric Co. v. United States Nuclear Regulatory Com.*, 750 F.2d 1394 (7th Cir.1984).

As a Uniform Act, Indiana's Supreme Court has looked to case law in other Uniform Trade Secret Act jurisdictions for relevant authority for the construction of trade secret law in Indiana. The Indiana Supreme Court, in *Amoco Production Company v. Laird,* 622 N.E.2d 912, 918 (Ind.1993) stated:

Other jurisdictions express the notion that due to the embodiment of a wide spectrum of commercial and technical information, the term 'trade secrets' 'is susceptible to no precise definition.' *Kubik, Inc. v. Hull* (1974), 56 Mich.App. 335, 345, 224 N.W.2d 80, 86 *see also Colorado Supply Co. Inc., v. Stewart* (1990), Co. Ct.App., 797 P.2d 1303, 1306. In determining whether information is protectable as a trade secret, 'the first

and foremost consideration is whether the ... information is readily accessible to a reasonably diligent competitor.' *Surgidev Corp. v. Eye Technology, Inc.* (D.Minn.1986), 648 F.Supp. 661, 682. Courts also generally agree that information alleged as a trade secret must not be readily ascertainable from another source.... [Citations omitted].

Appellant's Br. p. 27–28.

As another example, SBC Indiana has made an effort in recent months to convince the Indiana General Assembly that its access lines are open to [Competitive Local Exchange Carriers] CLECs. In support of this assertion, in an effort to demonstrate the existence of competition in the telephone industry, SBC Indiana has prepared a detailed report that estimates the number of lines, in various categories, served by CLECs. In its report, SBC describes the methodologies used to make its estimations: '... SBC estimates the number of CLEC access lines by using two different methodologies, one based on interconnection trunks, and the other based on E911 database listings. These are the same conservative methodologies used by SBC and reviewed by the FCC in connection with the Texas, Kansas/Oklahoma and Missouri/Arkansas 271 Applications.' SBC's 4Q '02 Report, Corporate Competitive Analysis, dated 2/3/03. If SBC Indiana can calculate this type of estimation, then so can other telephone companies. And even though these are admittedly estimations, this context of number of access lines, etc., is not like that of estimating a secret formula's components, for to have an accurate estimation of the number of access lines is, for competitive purposes, as useful as having the exact numbers.

Appellant's Br. p. 29.

The Commission has required the completion of surveys requesting the same

or similar information since at least 1997. We do not know whether all or only some Indiana telephone companies consider the Survey responses to be trade secrets. What is obvious, though, is that not all Indiana telephone companies desire that the Commission treat the Survey results as nondisclosable public records. While not dispositive of the issue in this Order, this lack of unanimity, or even a consensus, among Indiana's telephone companies, as to the need for confidential treatment of the Survey results, is a factor that weighs against a finding that Survey responses constitute trade secrets.

Appellant's Br. p. 29.

We also note that the Survey itself does not require the disclosure of any financial information or any customer specific information. The closest the Survey comes to asking for any customer specific information is the request for the number of customers within each rate center. All other data is requested on a statewide basis.

Appellant's Br. p. 29.

[G]iven the slow development of competition, and the need, therefore, for regulation to continue to direct telephone companies toward a truly competitive environment, we find that access to the general information contained in the Survey may help to promote competition among telephone companies. As an example, at various times the Commission has received completed competition surveys in which every data response has been 'zero,' indicating that the respondent was not actually doing business in Indiana, yet the respondent has asked that the responses be treated as confidential. Keeping that status of operation in Indiana a secret is 'game playing,' and certainly does nothing to promote competition. Having general information as to who is competing, at

what level and where, would help identify where telephone companies are operating, and allow competition to dictate the outcome.

This Commission has been legislatively mandated to provide the General Assembly's Regulatory Flexibility Committee with information on competition in the telephone industry. The information sought by the Commission to satisfy that legislative mandate is general in nature, requesting only level of service (number of access lines, provisioning of advanced services, etc.) and general location service. No customer specific or financial information is sought. The information sought in the Survey is necessary to satisfy our legislative mandate. Based on our determination as to the best way to report to the Regulatory Flexibility Committee, some Survey information is reported in an aggregate fashion and some is not. As a result, some information reported to the Committee is exactly as it appears on the completed Survey. Our report to the Regulatory Flexibility Committee is a disclosable public record.

This Commission is directed to give a narrow construction to the trade secret exception to the disclosure of public records. Based on our findings that much of the information in the Survey can be obtained from other sources; that the Survey provides only general information about a company's customer base, containing neither financial information nor customer specific information; that the overall immature condition of competition in the telephone industry in Indiana is well known; and that this Commission, not competition itself, still needs to provide competitive direction to the telephone industry, we find that the Survey responses are not trade secret information, and therefore, are not ex-

cepted from public disclosure under Indiana Code 5–14–3–4(a).

Appellant's App. p. 10, 12. SBC now appeals this ruling.

## DISCUSSION AND DECISION

### I. Standard of Review

In resolving the issues that SBC presents today, we first note that the General Assembly created the IURC primarily as a "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *United States Gypsum v. Indiana Gas Co.*, 735 N.E.2d 790, 795 (Ind.2000). The purpose of that agency is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of this State. *Indiana Bell Telephone Co., Inc. v. Indiana Utility Regulatory Comm'n*, 715 N.E.2d 351, 354 (Ind.1999). Moreover, the broad grant of regulatory authority given the IURC by the legislature includes implicit powers necessary to effectuate the statutory regulatory scheme. *Office of Utility Consumer Counselor v. Public Serv. Co. of Indiana, Inc.*, 608 N.E.2d 1362, 1363 (Ind.1993).

An order of the IURC is subject to appellate review to determine whether it is supported by specific findings of fact and by sufficient evidence, as well as to determine whether the order is contrary to law. *United States Gypsum*, 735 N.E.2d at 795. On matters within its discretion, the IURC enjoys wide discretion. *Id.* Its findings and decision will not be lightly overridden just because this Court might reach a contrary opinion on the same evidence. *Id.* In order for this Court to vacate the Commission's Order, SBC must demonstrate that the order either lacks a factual basis or is contrary to law. *See id.*

### II. SBC's Claims

### A. Findings of Fact

SBC first contends that the IURC's order governing trade secrets was not based on specific factual findings. In particular, SBC argues that the uncontradicted evidence established that SBC's data satisfied all trade secret criteria and, therefore, the IURC's decision was contrary to the evidence presented.

In resolving this issue, we note that the IURC's order must include specific factual findings on all issues presented. *Spring Hills Developers, Inc. v. Reynolds Group, Inc.*, 792 N.E.2d 955, 958 (Ind.Ct. App.2003). Those findings must be supported by substantial evidence based upon the record as a whole. *Citizens Action Coalition v. Public Serv. Co.*, 612 N.E.2d 199, 201 (Ind.Ct.App.1993). Additionally, the IURC must follow governing law and correctly apply that law to the facts. *Hancock County Rural Elec. Membership Corp. v. City of Greenfield*, 768 N.E.2d 909, 911 (Ind.Ct.App.2002).

Turning to the merits here, we note that in accordance with Indiana Code section 8–1–2–29, the IURC is required to protect information deemed confidential under the Indiana Access to Public Records Act (the Act). Additionally, the Act mandates that an administrative agency may not disclose trade secrets. Ind.Code § 5–14–3–4. And, according to our Uniform Trade Secret Act:

'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain eco-

nomic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind.Code § 24-2-3-2. As this court has observed, there are generally four characteristics within the definition of a protectable trade secret: "(1) information, (2) which derives independent economic value, (3) is not generally known, or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (4) the subject of efforts reasonable under the circumstances to maintain its secrecy." *Hydraulic Exchange and Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 785–86 (Ind. Ct.App.1998).

Here, SBC contends that the findings made by the IURC contradict the legislature's policy of protecting trade secrets from disclosure to competitors. To be sure, SBC argues that such self-contradictory inferences embodied in the findings cannot support the IURC's conclusion. In essence, SBC argues that a competitor would be able to determine the number of SBC customers in each of the communities served by the separate exchanges in the particular service area and its disclosure would be useful to current or potential competitors that would enable them to evaluate market potential, make pricing decisions and/or market entry decisions. Thus, SBC urges that divulging such information would have a substantial detrimental impact on SBC. SBC then notes that the order agrees with these points when the IURC found that telephone companies "may derive some level of independent economic value" by preserving the confidentiality of such information, and that its disclosure would "promote competition" by assisting competitors in their efforts to obtain business from incumbents such as SBC. Appellant's App. p. 12–13. More-

over, SBC points out that the uncontradicted evidence established that SBC made extensive efforts to secure the confidential data. Such internal data about how many customers it has in each of its individual marketing areas is obviously invaluable to an actual or potential competitor in evaluating market potential and in making its own pricing decisions. Thus, says SBC, there is nothing contradicting this statement and, therefore, the data should be confidential information that is entitled to trade secret protection.

We note that contrary to SBC's arguments that the findings should be viewed as "uncontradictory" in its favor, the order supports the determination that only general information about a company's customers and data available or ascertainable through other sources is required by the survey. Although SBC argues that its information should be deemed confidential and points out that it took steps to preserve the confidentiality of the information, SBC has not satisfied the requirements of the trade secret test, and the IURC's findings support that conclusion. That is, SBC has not rebutted the IURC's determination that the information is not a trade secret under Indiana Code section 24-2-3-2, inasmuch as the general nature of the disclosed information reveals that it has limited independent economic value and that the information can be ascertained through other means. Thus, SBC's argument with respect to this issue must fail.

### B. Conclusions of Law

Notwithstanding the above, SBC goes on to argue that the IURC's decision is contrary to law because that agency failed to follow controlling precedent with regard to whether the information it supplied should be exempted from public disclosure under trade secret law. Put another way, SBC contends that the IURC's order may

not stand because the agency departed—without explanation—from established precedent when it decided here that it was no longer applying a rebuttable presumption that SBC's information was entitled to such protection.

■ We note that an agency may change its course and is not forever bound by prior policy or precedent. That is, where a policy or precedent is flawed and needs to be changed, the agency may change the course as long as it explains the reasons for doing so. In *Community Care Ctrs. v. Dep't of Pub. Welfare*, 523 N.E.2d 448, 450–51 (Ind.Ct.App.1988), this court commented as follows:

> It is well-established under federal law that agencies are free to change past rulings and policies. *See Hatch v. Federal Energy Regulatory Comm'n* (D.C.Cir.1981), 210 U.S.App. D.C. 110, 654 F.2d 825; *Columbia Broadcasting Sys. v. Federal Communications Comm'n* (D.C.Cir.1971), 147 U.S.App. D.C. 175, 454 F.2d 1018. Clearly, an agency should not be bound by prior policy when that policy proves to be flawed or in need of change. However, a change in policy must be explained and the reasons therefore articulated. *See Cheshire Hosp. v. New Hampshire–Vermont Hospitalization Serv., Inc.* (1st Cir.1982), 689 F.2d 1112; *Hatch, supra; Columbia Broadcasting, supra.* As clarified in *Columbia Broadcasting:*
>
> 'We do not challenge the Commission's well established right to modify or even overrule an established precedent or approach,. ... Lodged deep within the bureaucratic heart of administrative procedure, however, is the equally essential proposition that, when an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law.' *Id.* at 1026.

In this case, a portion of the IURC's order reads as follows:

> The Commission is aware that, in prior years, presiding Administrative Law Judges, assigned to various proceedings in which confidentiality has been requested for portions of the completed Local Competition Surveys, have found that certain information should be treated as confidential on a *preliminary* basis. However, we note that formal *in camera* review has never been requested by a party to these proceedings, and the determinations made by the Presiding Administrative Law Judges have remained 'preliminary.' We are also aware that several existing Commission Orders contain language that creates a rebuttable presumption that 'market information,' and even market information submitted to monitor competition, is confidential. This Commission has recently tried to be more precise in its determinations as to what information will be treated and maintained as confidential. We find it appropriate, at this time, to fully examine the issue of confidentiality as it pertains to the completed Survey.

Appellant's App. p. 6–7.

In examining the order, we note that the portion of the ruling quoted above to which SBC directs us, is not a model of clarity with regard to the IURC's rationale for departing from established precedent. However, when reviewing the remainder of the order, it is apparent that SBC has failed to demonstrate that the disclosure would inflict substantial competitive harm upon the company, and it has also not shown that the information could not be readily ascertainable from another source. To be sure, SBC has prepared its report estimating the number of lines in various

categories and it goes on to describe the methodologies used in making those estimates. As the order points out, "[I]f SBC Indiana can calculate this type of estimation, then so can other telephone companies." Appellant's Br. p. 29.

■ The IURC also points out that not all Indiana telephone companies have desired the agency to treat the survey results as nondisclosable public records. We agree with the IURC's statement that such a lack of unanimity or even a consensus among the other telephone companies regarding the need for confidential treatment of the survey results is a factor that militates against a finding that the survey responses should be considered trade secrets. Moreover, the order makes it clear that certain information was to be treated as confidential on a *preliminary* basis, appellant's app. p. 6–7, and we have heretofore not been called upon to resolve any challenge to such a determination. Thus, it is inherent that the information requested by the survey is not entitled to trade secret protection.

What is more, there is no disclosure of any financial information or any customer-specific data. Instead, only the level of service is requested as well as the general location of the service. Therefore, because the information contained in the survey can be obtained from other sources and the survey provides only general information about a company's customer base that does not contain specific customer information, we find that the IURC's deviation from precedent regarding the entitlement of information to trade secret protection was permissible. Thus, we cannot say that the IURC's decision to depart from prior precedent in light of the above factors was error.

Judgment affirmed.

ROBB, J., concurs.

BARNES, J., dissents with opinion.

BARNES, Judge, dissenting with separate opinion.

I respectfully dissent. I am not comfortable with affirming the IURC's decision by relying on its assessment of an outside-the-record document that this court cannot review.

Here, SBC filed a petition seeking to maintain the confidentiality of information regarding the number of SBC access lines associated with each central or local exchange office throughout Indiana; from this information can be derived the number of SBC customers served by each local exchange office. In support of this petition, SBC filed a sworn affidavit from Brenda K. Barnes, SBC employee (and no relation to this writer), in which she asserted that SBC derived independent economic value from this information remaining confidential, outlined the extensive steps SBC takes to maintain the confidentiality of this information, and further expressly stated, "No amount of independent research could yield this information to Ameritech Indiana's existing or potential competitors." App. p. 28. This affidavit satisfied the four requirements of a protectable trade secret: it concerns information having independent economic value that SBC has taken reasonable steps to keep confidential, and which is not readily ascertainable by others using proper means. *See Hydraulic Exchange and Repair, Inc. v. KM Specialty Pumps, Inc.,* 690 N.E.2d 782, 785–86 (Ind.Ct.App.1998). No party has ever filed any evidence to contradict this assertion; the Office of Utility Consumer Counselor, who had notice of SBC's confidentiality request, never responded to it and has not participated in this appeal.

In its order denying confidential treatment to SBC's local central office access line information, the IURC did not attempt to refute SBC's assertions that the

information was in fact "information" for trade secret purposes, or that SBC has taken reasonable steps to protect its confidentiality. It did attempt to refute SBC's claim that the information was not readily ascertainable by others, stating as follows:

SBC Indiana has made an effort in recent months to convince the Indiana General Assembly that its access lines are open to CLECs. In support of this assertion, in an effort to demonstrate the existence of competition in the telephone industry, SBC Indiana has prepared a detailed report that estimates the number of lines, in various categories, served by CLECs. In its report, SBC Indiana describes the methodologies used to make its estimations: "... SBC estimates the number of CLEC access lines by using two different methodologies, one based on interconnection trunks, and the other based on E911 database listings. These are the same conservative methodologies used by SBC and reviewed by the FCC in connection with the Texas, Kansas/Oklahoma and Missouri/Arkansas 271 Applications." *SBC 4Q '02 Report,* Corporate Competitive Analysis, date 2/3/03. If SBC Indiana can calculate this type of estimation, then so can other telephone companies. And even though these are admittedly estimations, this context of number of access lines, etc., is not like that of estimating a secret formula's components, for to have an accurate estimation of the number of access lines is, for competitive purposes, as useful as having the exact numbers.

App. p. 12.

There are two problems with this analysis. First, it relies upon evidence not found in the record of this proceeding, namely the *"SBC 4Q '02 Report"* to which the IURC refers. It is axiomatic, and has

been for many years, that facts found by an administrative agency must be based on substantial evidence *in the agency's record of proceedings. City of Muncie v. Public Serv. Comm'n,* 177 Ind.App. 155, 158, 378 N.E.2d 896, 898 (1978) (emphasis added). "When substantial evidence cannot be found in the record to support the agency's order, that order must be reversed as being contrary to law." *Id.* "[T]he [IURC's] orders must be based upon substantial evidence in the record and be specific enough to enable this court to intelligently review the [IURC's] decision." *United Tel. Co. of Indiana, Inc. v. Public Serv. Comm'n,* 402 N.E.2d 1013, 1016 (Ind.Ct.App.1980). I do not see how we can intelligently review the IURC's decision to deny trade secret protection to SBC's information without being able to view the document it relied upon to find that the information was readily accessible by others.

It does appear, pursuant to the IURC's own regulations, that it may take "administrative notice" of other documents filed with the IURC in other matters.[2] Ind. Admin. Code tit. 170, r. 1–1.1–21(j). However, in order for the IURC to do so, a party must be notified of the IURC's intention to rely on such a document, given an opportunity to respond to it, and the document must be included in the record of proceedings. 170 IAC 1.1.1–21($l$) and (n). Here, SBC apparently had no advance notice that the IURC would rely on an outside-the-record document in making its decision, no opportunity to respond to it, and the document was not made part of the record in this case, in contravention of the IURC's own rules.

The second problem with the IURC's rationale concerning the ready accessibility of the information SBC sought to keep confidential is that the IURC seems to be

---

**2.** It is not clear that the report the IURC relied upon was ever filed with it or was only

presented to the General Assembly. I will assume it was filed with the IURC.

on a different page than SBC as to what SBC precisely wished to keep confidential. SBC essentially seeks confidential treatment of the numbers of customers it has in each discrete area of Indiana served by a local exchange office. However, SBC contends that the report and information the IURC referred to in finding ready accessibility related to SBC's total number of access lines and customers in its entire service area. SBC also argues that the number of customers in discrete marketing areas is much different from knowing the number of customers SBC has statewide, as the local customer information allows competitors to make targeted market-entry and pricing decisions. IURC's order never discusses this distinction—again, perhaps because it relied on extra-record evidence to make its ruling, without notice and opportunity to respond to this evidence by SBC. Also, we have no good way to evaluate the merits of SBC's argument regarding this distinction because of the IURC's reliance on extra-record evidence, but that is the IURC's fault, not SBC's. I further note that the IURC in its brief does not respond to this argument in any way.

Additionally, both the IURC and the majority acknowledge that the information SBC seeks to keep confidential has independent economic value, but nevertheless decline to afford trade secret protection to the information because that value is "limited" or lacks "significance." Op. p. 1185; App. p. 12. However, the trade secret statute affords protection to information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use...." Ind.Code § 24–2–3–2. The statute does not require a showing that the information has "significant" or more than "limited" economic value.

It appears that the IURC is apt to narrowly construe the definition of "trade secret" to further the goal of increasing telecommunication industry "competition." That may possibly be a laudable goal, depending on one's perspective, but in my view the IURC cannot accomplish that goal by relying on extra-record evidence to support its findings or by placing requirements for trade secret protection that are not found in the statute. Also, the statute does not indicate that the elements of the trade secret test should be balanced against other factors, such as the desire to increase competition in a recently deregulated industry. Of course, the keeping of any trade secret may lessen competition; the corollary may or may not be true. Is it a "given" that *not* giving certain information trade secret protection will increase competition? Perhaps so, or maybe most likely so, but the point is that the decision made here was one made with facts outside the record. I decline to jump on the "competition" train without the sufficient tracks of on-the-record evidence being present.[3] I would reverse the IURC's order denying trade secret protection to the information SBC seeks to keep confidential.

---

3. I would also note that SBC's predecessors devoted substantial time, energy, and resources in putting the current telephone infrastructure in place. I think, for all of the trumpeting of the value of "competition" in telecommunications services, that SBC's investment in creating the telephone infrastructure should be given some consideration in determining whether its local customer information ought to be kept confidential and that the focus should not be solely on increasing "competition."