

I N T H E

# Court of Appeals of Indiana

Steve Wilcox and Melissa Wilcox,

*Appellants-Plaintiffs*

v.

Matthew A. Gingrinch and Grateful Home Exteriors, LLC,

*Appellees-Defendants*



FILED

Jan 30 2026, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

January 30, 2026

Court of Appeals Case No.
25A-PL-1157

Appeal from the Morgan Superior Court

The Honorable Sara Dungan, Judge

Trial Court Cause No.
55D03-2310-PL-1842

**Opinion by Judge May**
Judges Altice and Foley concur.

**May, Judge.**

[1] Steve and Melissa Wilcox appeal from the trial court's judgment following a jury trial on their claims for breach of contract, violations of the Indiana Home Improvement Contracts Act ("HICA"), and fraud against Grateful Home Exteriors, LLC and Matthew Gingrich. The Wilcoxes raise several issues on appeal regarding jury instructions, the sufficiency of evidence supporting the jury's verdicts, damages calculations, and cumulative error. However, the Wilcoxes' arguments are waived due to their significant noncompliance with Indiana Appellate Rule 46. We accordingly affirm.

## Facts and Procedural History

[2] The Wilcoxes own property on Sichting Road in Martinsville, Indiana. The property includes a pole barn structure that the Wilcoxes used as a retreat and for entertaining friends. In March 2023, the Wilcoxes met Matthew Gingrich, principal of Grateful Home Exteriors, LLC, and discussed converting the pole barn into a more functional residential dwelling by expanding it and improving the interior.

[3] On or about March 31, 2023, the parties entered a construction contract under which Grateful Home Exteriors would perform various improvements to the structure. The initial contract price was approximately $164,000. The contract contemplated a fifty percent down payment with progress payments thereafter.

[4] On March 31, 2023, the Wilcoxes paid Grateful Home Exteriors $90,000 as a down payment. This exceeded the fifty percent contemplated in the contract.

Work began in June 2023.  On July 17, 2023, the Wilcoxes made an additional payment of $50,000.

[5]     On July 31, 2023, the parties discussed updating the contract to reflect an expanded scope of work.  The updated contract price was $223,196.67.  The expanded work included additional plumbing for two bathrooms, a kitchen, washer and dryer connections, garage floor drain, exterior spigots, and a French drain, which would all be connected to the septic system.  The framing work was expanded to include interior framing and windows.  However, the Wilcoxes never signed the July 31 updated contract.

[6]     Throughout the project, Steve Wilcox was present at the property almost daily, often staying overnight in a camper on the premises.  He repeatedly requested information regarding scheduling, budgets, change orders, specifications, and permitting from Gingrich, project manager Chris York, and subcontractor William O'Neal.  Steve Wilcox received no substantive responses to these requests.  Grateful Home Exteriors did not obtain required building or septic permits until after work stopped, despite repeated reminders.  Work on the project ceased in late summer or early fall 2023 when the relationship between the parties deteriorated.  At the time work stopped, significant portions of the contracted work remained incomplete, including the septic system installation, portions of the plumbing and electrical work, concrete work for the kitchen addition, and other items.

In October 2023, the Wilcoxes filed a complaint in Morgan Superior Court No. 3 alleging three counts: (1) breach of contract against Grateful Home Exteriors, LLC; (2) violations of HICA against Grateful Home Exteriors, LLC; and (3) fraud against Matthew Gingrich individually. Defendants answered and filed a counterclaim, which they later withdrew.

The matter proceeded to a two-day jury trial. Defendants offered no independent expert testimony or documentary evidence in rebuttal, relying solely on the testimony of subcontractor William O'Neal, whose work was the subject of the deficiencies alleged. The Wilcoxes presented evidence regarding what work had been completed and what remained undone when Grateful Home Exteriors left the project. William O'Neal, the primary subcontractor who performed framing, plumbing, and other work, provided a September 2023 estimate to complete the unfinished work. This estimate included items from the original scope of work that had not yet been completed, such as the septic system installation ($22,000), French drain installation ($2,400), concrete work for the kitchen addition ($8,500), completion of electrical rough-in work, and other items.

The Wilcoxes also presented expert testimony from Dan Katz and construction professional Brad Bales regarding deficiencies in the workmanship and the costs to remedy them. Bales testified that corrections and repairs to the work performed would cost $61,700. The Wilcoxes contended they paid Grateful Home Exteriors $140,000 in total but that significant work remained incomplete or was performed defectively.

[10] Central to the Wilcoxes' fraud claim was evidence regarding misrepresentation of subcontractor costs. The Wilcoxes presented two different documents bearing William O'Neal's company letterhead with different pricing for the same scope of work. O'Neal testified at trial that he had never before seen one of the documents, did not prepare it, and had no knowledge of its contents, even though it appeared on his letterhead. Gingrich testified that he and O'Neal together created the revised document. The Wilcoxes alleged that Gingrich fabricated or altered O'Neal's bid to conceal the cost of project manager Chris York and to inflate the amount subject to Gingrich's ten percent contractor fee.

[11] On April 10, 2025, the jury returned a verdict in favor of the Wilcoxes on Count I (breach of contract) and awarding damages in the amount of $67,825.44 against Grateful Home Exteriors, LLC. The jury found in favor of Defendants on Count II (HICA violations) and Count III (fraud). The trial court entered judgment on the jury verdict.

## Discussion and Decision

[12] The Wilcoxes raise five issues on appeal regarding jury instructions on HICA, the jury's verdict on fraud, damages calculations, cumulative error, and attorney's fees. They request reversal of the judgments on HICA and fraud claims, and recalculation of damages on the breach of contract claim. However, the Wilcoxes' briefing fails to comply with Appellate Rule 46.

The purpose of our appellate rules – especially Appellate Rule 46 governing the content of briefs – "is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case." *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (emphasis added) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)). A party's analysis of an issue on appeal must be supported in relevant part by citations to the Appendix or parts of the Record on Appeal upon which the party relies. Ind. Appellate Rule 46(A)(8)(a). "[W]e will not search the record to find a basis for the party's argument." *Carter ex rel. CNO Fin. Grp., Inc. v. Hilliard*, 970 N.E.2d 735, 755 (Ind. Ct. App. 2012). A party's arguments must be supported by cogent reasoning and citations to legal authority. App. R. 46(A)(8)(a). "We will not step in the shoes of the advocate and fashion arguments on his behalf, 'nor will we address arguments' that are 'too poorly developed or improperly expressed to be understood.'" *Miller*, 212 N.E.3d at 657 (quoting *Dridi*, 172 N.E.3d at 364).

The Wilcoxes' choice to proceed pro se does not minimize or negate these requirements. As pro se litigants, the Wilcoxes are "'held to the same standards as a trained attorney' and 'afforded no inherent leniency simply by virtue of being self-represented.'" *Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 410 (Ind. 2025) (quoting *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014)).

The Wilcoxes' brief contains significant deficiencies. While their Statement of Facts includes some record citations, their reliance on nonexistent legal

authorities as well as their incorrect citations to and descriptions of other legal authorities significantly impeded our review.

## 1. Fabricated and Mischaracterized Legal Authorities

The Wilcoxes cite numerous legal authorities in their Brief. Of the cases cited, a substantial number either do not exist or have nothing to do with the propositions they purport to support. The Wilcoxes' Table of Authorities lists 22 cases. However, the Wilcoxes cite additional cases throughout the body of their brief that do not appear in the Table of Authorities at all, in violation of Appellate Rule 46(A)(2). In total, counting both the cases listed in the Table of Authorities and the additional cases cited only in the brief's text, a majority of the cases are completely fabricated – they do not exist at the citations provided. Of the cases that do exist, many are grossly mischaracterized or cited for propositions they do not support.

### 1.1. Completely Fabricated Cases

The Wilcoxes cite "Reed v. State, 810 N.E.2d 1186 (Ind. 2004)" multiple times as primary authority for their argument that the trial court had a mandatory duty to provide jury instructions on HICA. (Appellants' Br. at 25, 26, 27, 35.) This case appears not to exist at that citation. The reporter citation provided leads to *Indiana Bell Telephone Co., Inc. v. Indiana Utility Regulatory Comm'n,* 810 N.E.2d 1179 (Ind. Ct. App. 2004), a utility rate-making case that has nothing to do with jury instructions, HICA, or any of the propositions for which the

Wilcoxes cite it. No case named "Reed v. State" was decided by the Indiana Supreme Court in 2004.

[18] Similarly, the Wilcoxes cite "Lacy v. State, 419 N.E.2d 489 (Ind. 1981)" to support the proposition that trial courts have "the inherent duty, but the unquestioned authority, to issue a curative instruction whenever juror confusion surfaces, even mid-trial" and for "upholding judge's sua sponte admonition to clarify law." (Appellants' Br. at 26.) The citation "419 N.E.2d 489" leads to *People v. Harris*, 419 N.E.2d 489 (Ill. App. 1981), an Illinois criminal case about denial of a continuance request. No case named "Lacy v. State" was decided by the Indiana Supreme Court in 1981.

[19] The Wilcoxes also cite "Graves v. State, 773 N.E.2d 157, 161 (Ind. 2002)" twice in their brief for the proposition that the "trial judge committed reversible error by withholding a juror note and declining to solicit counsel's input" in violation of Indiana Jury Rule 20(b). (Appellants' Br. at 26, 45.) This case appears not to exist. The reporter citation "773 N.E.2d 157" leads to *People v. Johnson*, 773 N.E.2d 155 (Ill. App. 2002). No case named "Graves v. State" was decided by the Indiana Supreme Court in 2002.

[20] The Wilcoxes cite "Thompson v. Best" for the proposition that a jury's fraud verdict should be set aside when unsupported by substantial evidence. (Appellants' Br. at 30.) However, the brief's citation is internally inconsistent: the Table of Authorities lists the case as "989 N.E.2d 299 (Ind. Ct. App. 2013)," while the body of the brief on pages 30 and 36 cites it as "118 N.E.3d 299, 305

(Ind. Ct. App. 2019)." The reporter citation "989 N.E.2d 299" leads to *People v. Pinkson*, 989 N.E.2d 298 (Ill. App. 2013). The reporter citation "118 N.E.3d 299" leads to *State of Ohio v. Tudor*, 118 N.E.3d 297 (Ohio App. 2019). No case named "Thompson v. Best" was decided by the Court of Appeals of Indiana in 2013 or 2019.

[21] Additional fabricated cases include:

> "Coomer v. Bd. of Transp. of Knox County, 247 N.E.2d 93 (Ind. 1968)" (listed in the Table of Authorities as appearing at page 13 of the brief, but it actually appears on page 24). The actual citation leads to *West v. Indiana Ins. Co.*, 247 N.E.2d 90 (Ind. 1969). No case named "Coomer v. Bd. Of Transp. of Knox County exists in Indiana;

> "Ferro Corp. v. Cook, 548 N.E.2d 1088 (Ind. Ct. App. 1990)" (listed in Table of Authorities as appearing at page 22 of the brief, but appears nowhere in the brief, but it actually appears on page 35). The actual citation leads to *In Interest of R.B.W.*, 548 N.E.2d 1085 (Ill. App. 1989). No case named "Ferro Corp. v. Cook" exists in Indiana;

> "Ganger v. State, 776 N.E.2d 353 (Ind. 2002)" (listed in Table of Authorities as appearing at page 6). The brief is internally inconsistent: the Table of Authorities attributes "776 N.E.2d" to "Ganger v. State" but the Wilcoxes later correctly cite "776 N.E.2d" as being *Stonger v. Sorrell*, 776 N.E.2d 353 (Ind. 2002). No case named "Ganger v. State" exists in Indiana;

> "Gosman v. State Farm, 947 N.E.2d 386 (Ind. Ct. App. 2011)" (listed in Table of Authorities as appearing at page 18 of the brief, but actually appears on page 30). The actual citation leads to *American Serv. Ins. Co. v. United Auto. Ins. Co.*, 947 N.E.2d 382 (Ill.

App. 2011).  No case named "Gosman v. State Farm" exists in Indiana;

"Heim v. Fletcher, 873 N.E.2d 725 (Ind. Ct. App. 2007)" (listed in Table of Authorities as appearing at page 25 of the brief, but is not actually cited in the brief).  The actual citation leads to *Jones v. State*, 873 N.E.2d 725 (Ind. Ct. App. 2007).  No case named "Heim v. Fletcher" exists in Indiana;

"Helmsing v. Fletcher, 871 N.E.2d 725 (Ind. Ct. App. 2007)" (does not appear in the Table of Authorities, but is cited in the brief at page 35 for fraud evidence standards).  The actual citation leads to *People v. Urdiales*, 871 N.E.2d 669 (Ill. 2007).  No case named "Helmsing v. Fletcher" exists in Indiana;

"Kovach v. State, 992 N.E.2d 409 (Ind. 2013)" (listed in the Table of Authorities as appearing at page 34, but is cited at page 43 of the brief for cumulative error analysis standard).  The actual citation leads to *In re Dashawn W.*, 992 N.E.2d 402 (N.Y. App. Div. 2013).  No case named "Kovach v. State" exists in Indiana;

"Patton v. ALCOA, 861 N.E.2d 232 (Ind. Ct. App. 2007)" (listed in the Table of Authorities as appearing at pages 27 and 34, but is cited at pages 39 and 44 of the brief involving discovery sanctions and exclusion of testimony).  The actual citation leads to *Forest Pres. Dist. of Cook Cnty. v. Illinois Lab. Rels. Bd.*, 861 N.E.2d 231 (Ill. App. 2006).  No case named "Patton v. ALCOA" exists in Indiana;

"Oddi-Sampson v. State, 201 N.E.3d 749 (Ind. 2022)" (listed in the Table of Authorities as appearing at page 4, but does not appear in the body of the brief) and "State v. Oddi-Sampson, 201 N.E.3d 749 (Ind. 2022)" (listed in the Table of Authorities as appearing at page 4, but is cited at page 18 of the brief for the proposition that courts avoid absurd results).  The actual citation

leads to *Commonwealth v. Kalila*, 201 N.E.3d 748 (Mass. App. Ct. 2023). No case named "Oddi-Sampson v. State" or "State v. Oddi-Sampson" exists in Indiana;

"*Clutter*, 648 N.E.2d at 670" (does not appear in the Table of Authorities, is not a full citation, and is cited at page 41 of the brief for expectation damages rule). The actual citation leads to *Johnson v. State*, 648 N.E.2d 666 (Ind. Ct. App. 1995). Without knowing the full case name, it is impossible to determine whether the "Clutter" case exists in Indiana;

"*Flick v. Reichert*, 119 N.E.3d 1244 (Ind. Ct. App. 2019)" (listed in the Table of Authorities as appearing at pages 26 and 32, but is cited at pages 37 and 41 of the brief). The actual citation leads to *State ex rel. Harris v. Rubino*, 119 N.E.3d 1238 (Ohio 2019). No case named "Flick v. Reichert" exists in Indiana.

## 1.2. Mischaracterized Real Cases

[22]     Of the cases the Wilcoxes cite that do exist, many are incorrectly described or cited for propositions they do not support. For example, the Wilcoxes cite "*Harrison v. Thomas*, 761 N.E.2d 816 (Ind. Ct. App. 2002)" in their Table of Authorities as appearing on page 27 and at page 38 of their brief for the proposition that "when a party cannot prove the actual cost of services under a cost-plus or time-and-materials agreement, 'the only proven cost is zero.'" The correct citation for *Harrison* is actually *Harrison v. Thomas*, 761 N.E.2d 816 (Ind. 2002). *Harrison* is an Indiana Supreme Court decision addressing the interpretation of a real estate purchase agreement's closing date provision. It contains no discussion of cost-plus or time-and-materials contracts, burden of proving costs, or any holding about unproven costs equaling "zero" recovery.

[23] The Wilcoxes cite "*Kapoor v. Dybwad*, 49 N.E.3d 108 (Ind. Ct. App. 2015)" in their Table of Authorities as appearing on page 18 and at page 30 for the proposition that "[a] jury's fraud verdict is reviewed under the clearly erroneous standard." *Kapoor* actually involves appellate review of a trial court's dismissal of fraud claims under Trial Rule 12(B)(6), which is conducted de novo. The case contains no discussion of jury verdicts, the clearly erroneous standard, or setting aside verdicts.

[24] Like *Kapoor*, the Wilcoxes cite "*Weber v. Costin,* 654 N.E.2d 1130" at pages 30 and 34, not included in their Table of Authorities, for the proposition that "[a] jury's fraud verdict is reviewed under the clearly erroneous standard." They also cite *Weber*, stating that "[a] fraud verdict cannot stand where the moving party's evidence is unchallenged." (Appellants' Br. at 34.) *Weber* addresses summary judgment on counts of fraud and waiver of right to trial by jury but does not address a jury's fraud verdict.

[25] The Wilcoxes cite "*West v. State*, 755 N.E.2d 173, 185 (Ind. 2001)" at page 28, not included in the Table of Authorities, for the proposition that "burden-shift errors are structural and presumptively prejudicial." However, "structural error" refers to fundamental constitutional errors in criminal trials such as denial of counsel. *See, e.g., Durden v. State*, 99 N.E.3d 645, 653 (Ind. 2018). The Wilcoxes have cited no civil case in which the structural error doctrine has been applied.

[26] The Wilcoxes cite "*J.S. Sweet Co., Inc. v. White County Bridge Commission*, 714 N.E.2d 219 (Ind. Ct. App. 1999)" at page 39, not included in the Table of Authorities, for the holding that "the contractor's failure to provide detailed cost breakdowns undermined the legitimacy of the charges and justified the owner's refusal to pay." The actual *J.S. Sweet Co.* case addresses mechanics' liens and prejudgment interest, and it contains no discussion of cost breakdowns in cost-plus contracts.

[27] The Wilcoxes cite "*Pierce v. State*, 29 N.E.3d 1258, 1271 (Ind. 2015)" at page 43, not included in the Table of Authorities, for the proposition that Indiana law requires appellate courts to consider the "combined impact" of multiple errors in cumulative error analysis. *Pierce* actually discusses sentencing of a credit-restricted felon in a child molesting case and includes no discussion of cumulative error doctrine.

[28] The Wilcoxes also cite "*Butler Motors, Inc. v. Benosky*, 181 N.E.3d 857 (Ind. Ct. App. 2021)" in their Table of Authorities as appearing on page 3 and on page 17 of their brief, but the actual case citation is at 181 N.E.3d 304. The brief mischaracterizes the case as standing for the proposition that "Indiana's consumer-protection statutes are routinely read in concert with fraud and unjust-enrichment claims," (Appellants' Br. at 17), when the case actually involved dismissal of claims involving the Deceptive Acts Statute, Ind. Code Sec. 24-5-0.5-3. *See* 181 N.E.3d at 309.

## 2. Further Violation of Appellate Rule 46

In addition to citing fabricated and mischaracterized cases, the Wilcoxes violated Appellate Rule 46(A)(2) by failing to include numerous cases in their Table of Authorities that they cite in the body of their brief. Appellate Rule 46(A)(2) requires the Table of Authorities to "list each case, statute, rule, and other authority cited in the brief, with references to each page on which it is cited. The authorities shall be listed alphabetically or numerically, as applicable." The following cases (real and fabricated) are cited in the brief but do not appear in the Table of Authorities:

*Miller v. Ind. Dep't of Workforce Dev.*, 878 N.E.2d 346 (Ind. Ct. App. 2007);

*Graves v. State*, 773 N.E.2d 157 (Ind. 2002);

*West v. State*, 755 N.E.2d 173 (Ind. 2001);

*Weber v. Costin*, 654 N.E.2d 1130 (Ind. Ct. App. 1995);

*J.S. Sweet Co., Inc. v. White County Bridge Comm'n*, 714 N.E.2d 219 (Ind. Ct. App. 1999);

*Clutter*, 648 N.E.2d at 670 (cited at page 41);

*Pierce v. State*, 29 N.E.3d 1258 (Ind. 2015);

*Helmsing v. Fletcher*, 871 N.E.2d 725 (Ind. Ct. App. 2007).

The Wilcoxes' failure to include cited authorities in the Table of Authorities further impeded our review and violated the express requirements of the appellate rules.

## 3. Presumed Use of Generative Artificial Intelligence

[30] The pattern and nature of the citation errors in the Wilcoxes' brief strongly suggest the use of generative artificial intelligence without adequate verification. Fourteen completely fabricated cases, systematic mischaracterizations of real cases, and citations leading to Illinois, New York, Ohio, and Massachusetts cases when Indiana authority is claimed point to reliance on AI-generated research that was never independently confirmed. This case illustrates a troubling trend. Litigants – both represented and pro se – increasingly rely on artificial intelligence tools to conduct legal research and draft briefs. While these tools can be useful, they also generate fabricated citations. *See Williams v. Kirch*, 268 N.E.3d 284, 288 (Ind. Ct. App. 2025) (cautioning attorneys and pro se litigants against using artificial intelligence tools to conduct legal research without independent citation verification because of the increasing occurrence of fictitious, AI-generated authorities).

[31] Courts nationwide have confronted this problem and imposed sanctions on attorneys and pro se litigants alike who file briefs containing fictitious authority. *See, e.g.*, *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-CV-00326-JPH-MJD, 2025 WL 1511211, at *2* (S.D. Ind. May 28, 2025); *Kruse v. Karlen, 692 S.W.3d 43 (Mo. Ct. App. 2024); Shahid v. Esaam,* 918 S.E.2d

198 (Ga. Ct. App. 2025). The solution is straightforward: verify every citation before filing. A simple check of the reporter volumes or online databases would have revealed that "*Reed v. State*, 810 N.E.2d 1186 (Ind. 2004)" does not exist, and that *Graves v. State*, 773 N.E.2d 157, 161 (Ind. 2002) leads to an Illinois post-conviction relief case. Had the Wilcoxes performed basic verification, the waiver we find today could have been avoided.

[32] The pattern of fabrication is particularly concerning because the Wilcoxes built their primary legal arguments on these nonexistent authorities. For instance, their entire argument regarding the trial court's alleged mandatory duty to provide HICA jury instructions rests on the fabricated "*Reed v. State*, 810 N.E.2d 1186 (Ind. 2004)" case, which they cite as establishing that trial courts have a "non-delegable duty 'to see that the jury is properly instructed on all matters of law.'" (Appellants' Br. at 25, 27.) When the foundational authority for a legal argument does not exist, we cannot evaluate the merits of that argument.

## 4. Waiver is Warranted

[33] We have a well-established preference for deciding cases on their merits, rather than on procedural grounds like waiver. *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015). "While we are often tolerant of minor infractions of the appellate rules so that we may decide appeals on their merits, those rules are nonetheless binding on all persons bringing appeals to this court." *Dridi*, 172 N.E.3d at 366 (quoting *Ramsey v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d 486, 490

(Ind. Ct. App. 2003)).  As a result, if a party's failure to comply with the Appellate Rules is "sufficiently substantial to impede our consideration of the issue raised," we will not address the merits of that issue.  *Pierce*, 29 N.E.3d at 1267 (quoting *Guardiola v. State*, 375 N.E.2d 1105, 1007 (Ind. 1978)).

[34]   The Wilcoxes' briefing errors go far beyond minor infractions.  "A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."  *In re Garrard*, 985 N.E.2d 1097, 1104 (Ind. Ct. App. 2013).  Here, the Wilcoxes' lack of cogent argument – built as it is on fabricated and grossly mischaracterized legal authority – impedes our ability to provide meaningful appellate review of any of their issues. The pervasive reliance on nonexistent cases makes it impossible to assess whether the Wilcoxes have raised meritorious legal issues.  We cannot step into the shoes of advocates and independently research and brief their case for them. *Miller*, 212 N.E.3d at 657.  Because the Wilcoxes' noncompliance with the appellate rules substantially impedes us from reaching the merits of this appeal, we are compelled to find that the issues the Wilcoxes attempted to raise are waived.  *See Dridi*, 172 N.E.3d at 366 (waiving claims when briefing failures impeded review).

[35]   We acknowledge that pro se litigants face distinct challenges when using generative artificial intelligence tools for legal research.  Such litigants may be unaware that these tools frequently generate fictitious case names and citations. Additionally, pro se litigants often lack access to professional legal databases that would allow them to verify whether a citation actually exists.  *See Dukuray*

*v. Experian Info. Sols.*, No. 23 Civ. 9043, 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024) (recognizing that pro se litigants may lack awareness of AI's tendency to fabricate citations and may not have access to Westlaw or Lexis to verify case citations), *adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024). These practical realities, however, do not excuse the filing of briefs that rely on nonexistent legal authority. Pro se litigants are held to the same standards as licensed attorneys, and courts do not accommodate litigants – whether represented or not – who support their arguments with fabricated cases. *See id.* (declining to impose sanctions but warning pro se plaintiff that future filings with fabricated citations may result in sanctions); *Al-Hamim v. Star Hearthstone, LLC*, 564 P.3d 1117, 1124 (Colo. App. 2024) (holding that pro se litigants must follow the same procedural rules as attorneys and accept the consequences of their errors, including the submission of AI-generated fictitious citations). The harms caused by such filings are significant: they waste the resources of opposing parties and the courts, and they erode public confidence in the integrity of legal proceedings. *See Dukuray*, 2024 WL 3812259, at *11 (observing that fabricated citations waste the opposing party's time and resources, consume judicial resources, and cause reputational harm to the legal system).

[36] There is no appellee herein to request sanctions, and the appellate record does not reflect that the Wilcoxes have previously filed documents containing fabricated citations. Under these circumstances, we decline to impose sanctions. We caution the Wilcoxes, however, as well as all litigants who appear before

this Court, that the submission of briefs citing nonexistent authorities in future proceedings may result in sanctions. Such sanctions could include the striking of filings, restrictions on future submissions, monetary penalties, or dismissal of the appeal. *See id.* (discussing sanctions such as stricken submissions, filing restrictions, dismissal of the case or monetary penalties).

## Conclusion

[37] The Wilcoxes' appellate brief contains pervasive citations to fabricated legal authorities and mischaracterizations of real legal authorities that significantly impeded our review. These deficiencies, combined with systemic violations of the Table of Authorities requirement, constitute substantial noncompliance with Appellate Rule 46 warranting waiver. We therefore affirm the trial court's judgment.

[38] Affirmed.


Altice, J., and Foley, J., concur.


APPELLANTS PRO SE

Steve Wilcox and Melissa Wilcox
Indianapolis, Indiana